## Lambert et al. v. Miller's Adm'r.
## Same v. Healey (two cases).

Feb. 21, 1939.

JAMES M. GILBERT, Judge.

R. W. KEENON and N. R. PATTERSON for appellants.

GOLDEN & LAY and M. F. HALL for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

On December 25, 1936, S. A. Healey hired a taxicab owned by John Lay and driven by Pete Lambert to transport him, his wife, Mrs. Myrtle Healey, their son, Chester Glenn Healey, and Mrs. Healey's mother, Mrs. Kitty Miller, from Harlan to Middlesboro and return. They left Middlesboro on the return trip about 5 o'clock in the afternoon, and when the taxicab reached a point near Tanyard Hill, on the road leading from Pineville to Harlan, it collided with an automobile owned and driven by Frank Freeman, who was traveling in the opposite direction; that is, from Harlan toward Pineville. The accident happened between 6 and 6:30 P. M. All of the occupants of the taxicab were injured. Mrs. Miller, who was 72 years of age, suffered a broken leg and a severe cut on her head. A car bearing a West Virginia license stopped at the scene of the accident, and Mrs. Miller was moved from the wrecked taxicab and placed in the West Virginia car to be taken to Harlan. This car had proceeded only a short distance when it ran off the road over a steep embankment and turned over several times. Mrs. Miller was taken from the wreckage, carried up the bank, placed in another passing car, and taken to a hospital in Harlan where she died early the next morning. Her son, Gilbert Miller, qualified as the administrator of her estate, and brought an action in the Bell Circuit Court against Frank Freeman, Pete Lambert, and John Lay to recover damages for her death, alleging that the injuries resulting in her death were caused by the joint and concurrent negligence of Freeman and Lambert, the drivers of the two automobiles. Similar actions were instituted by S. A. Healey, Mrs. Myrtle Healey, and Chester Glenn Healey to recover damages for injuries received by them. Frank Freeman filed an answer in each case which was a traverse and a plea of contributory negligence. John Lay and Pete Lambert filed answers in the S. A. Healey, Myrtle Healey, and Chester Glenn Healey cases which were in two paragraphs. The first paragraph was a

traverse, and in the second paragraph they alleged that the negligence of their codefendant, Frank Freeman, was the sole cause of the collision, and that it was unavoidable on their part. In the case filed by Kitty Miller's administrator, the answer of Lambert and Lay contained a third paragraph in which they alleged that the injuries causing the death of Mrs. Miller were not received in the accident referred to in the petition, but in the second accident in which she was involved. The four cases were tried together, and the jury returned the following joint verdicts against the defendants, Frank Freeman, John Lay and Pete Lambert: For Kitty Miller's administrator, $2,000, for Chester Glenn Healey, $10,000, for Mrs. Myrtle Healey $1,012, and for S. A. Healey $150. Pete Lambert and John Lay have prosecuted appeals from all of the judgments except the one in favor of S. A. Healey, which was for less than the jurisdictional amount. A motion that the three appeals be heard together has been sustained, and they will be disposed of in one opinion. The appellants moved for a directed verdict in their favor at the conclusion of the plaintiff's evidence, and it was overruled. They introduced their evidence, and again moved for a directed verdict in their favor with a like result. Their codefendant, Frank Freeman, then introduced two witnesses, and appellants again moved for a directed verdict in their favor, and the motion was again overruled. The chief ground relied upon for a reversal of each judgment is that the court erred in refusing to instruct the jury peremptorily to find for the defendants Lambert and Lay, and, since we have concluded that this contention is sound, it is unnecessary to consider the other grounds relied upon for reversal.

The taxicab driven by Lambert and the automobile driven by Freeman met in a head-on collision, and the sole question presented is whether or not there is any evidence of negligence on the part of Lambert. The road at the point where the accident occurred is concrete, 16 feet wide, with a berm varying in width from 4 to 8 feet. On the right-hand side in the direction in which the taxicab was traveling is a steep embankment 15 feet high. The taxicab was traveling slightly up grade. The accident happened between two curves, and the testimony of all the participants, including the appellees Mrs. Myrtle Healey and Chester Glenn Healey, shows that the two cars met on the right-hand side of

the road in the direction in which the taxicab was traveling. A number of witnesses were introduced who appeared on the scene immediately after the accident, and all of them placed the taxicab on the extreme right-hand side of the road with at least two wheels off the concrete and on the shoulder. The Freeman car was sitting about 5 feet in front of the taxicab, most of it to the left of the center of the road in the direction in which it was traveling. A pool of oil and broken glass was to the right of the center of the concrete facing toward Harlan.

The witnesses introduced by the plaintiffs were T. J. Ingram, Gilbert Miller, Myrtle Healey, Dr. U. G. Brummett, S. A. Healey, Chester Healey, L. K. Morgan, Claude White and Mrs. L. K. Morgan. They also read the depositions of Frank Freeman and Pete Lambert taken as if on cross-examination. T. J. Ingram, a civil engineer, testified concerning certain measurements made by him at the place of the accident. He stated that the paved portion of the road was 16 feet wide, and the shoulders varied in width from 4 to 8 feet, and that there was a 14-foot embankment at the place where the accident occurred. Gilbert Miller, son of Kitty Miller, testified concerning his mother's age and the condition of her health just prior to the accident. Myrtle Healey testified that the taxicab in which she was riding left Middlesboro about 5 o'clock in the afternoon. Her son, Chester Healey, was riding in the front seat with the driver, and she was sitting in the rear seat with her husband on her right and her mother on her left. The headlights on the taxicab were burning, and it was traveling at a moderate rate of speed. It traveled on the right-hand side of the road most of the time, but she did not know where it was at the time of the accident, but after the collision it was on the right-hand side of the road and a bus traveling from Harlan to Pineville passed the two wrecked cars. Dr. Brummett testified concerning the nature and extent of Chester Healey's injuries. S. A. Healey stated that he did not see the Freeman car; that he was rendered unconscious, and remembered nothing about the accident. Chester Healey stated that he was rendered unconscious by the collision, and remembered nothing concerning the accident. He remembered that just before the accident he could see the dirt shoulder on the right-hand side of the road, but could not see the hard surface. L. T. Morgan was driv-

ing an automobile toward Pineville, and arrived at the scene of the accident shortly after it happened. The taxicab was sitting on the right-hand side of the road facing toward Harlan with one rear wheel and probably both on the dirt shoulder of the road and the left front wheel on the concrete. The Freeman car was sitting on the road facing toward Pineville with the two left wheels to the left of the center line of the road. Claude White was a passenger in L. K. Morgan's car. He testified that after the accident the taxicab was sitting on the right-hand side of the road facing toward Harlan with the rear part of the car on the dirt shoulder. The Freeman car was on the concrete facing toward Harlan, and the front of the car was 3 feet to the left of the center line of the road in the direction in which it had been traveling. He saw broken glass on the road between the two cars. Mrs. L. K. Morgan testified that she and her husband arrived at the scene of the accident shortly after it occurred, and before the injured persons had been removed from the taxicab, and that the Freeman car was sitting in the middle of the road astride the center line. The taxicab was on the right-hand side of the road. The back end of the taxicab and the right front wheel were off the concrete on the dirt shoulder. The deposition of the defendant Frank Freeman, taken by the plaintiffs as if on cross-examination, was read. He testified that he was traveling down grade at a speed of 35 to 40 miles an hour, and that the accident happened between two curves. When asked to state what caused the accident, he said:

"Well, I couldn't tell you what caused it or what happened. I thought I was going around there on my side of the road with everything in the clear, and the accident happened before I knew anything."

He stated that after the accident the taxicab was sitting at an angle on the right-hand side of the road in the direction in which it was traveling. He repeatedly stated that he did not know how the accident happened, but admitted that it was a head-on collision. The deposition of the defendant Pete Lambert, taken as if on cross-examination, was also read by the plaintiffs. He testified that he had been traveling at a speed of 30 or 35 miles an hour, but at the time of the collision had slowed down to 20 or 25 miles an hour. He saw the lights of the Freeman car approaching from the opposite direc-

tion, and realized that it was on his side of the road when the cars were about 50 yards apart. He was asked to tell how the accident happened, and said:

"Well, I was going up straight the other side of Tanyard Hill and I saw the light of another car. He was rounding a curve, and as he rounded the curve I began to ease over as far as I could get on the right side of the road; when he had got on the straight I saw that he was on my side of the road, and I began to get off of the pavement, and when I had gotten off the pavement, as far as I could, he was still on my side of the road, and as we neared, I was checking speed; and I couldn't avoid the accident unless I went over the bank."

The defendants Lay and Lambert introduced a number of witnesses who arrived at the scene of the accident immediately after it occurred, and all of them testified that the taxicab was sitting on the extreme right hand side of the road and that the Freeman car was sitting on the concrete headed toward Harlan and to the left of the center of the road in the direction in which it had been traveling. John Cox was driving a bus from Harlan to Pineville, and passed just after the collision. He was able to pass on the concrete to the right of the wrecked cars. By agreement of the parties, the depositions of the plaintiffs Chester Healey and Myrtle Healey, taken as if on cross-examination, were read. In his deposition Chester Healey stated positively that the taxicab in which he was riding was on the right-hand side of the road when the collision occurred, and he stated that the driver of the taxicab was not at fault. In her deposition Myrtle Healey stated that she did not see the Freeman car before the collision, but that Lambert was driving the taxicab at a moderate rate of speed on the right side of the road.

She was asked these questions and made these answers:

"Q. After the collision what happened to you? A. I got out of the car.

"Q. Did your car move any after the collision? A. No.

"Q. Stop right there? A. Yes, if it was moved, I didn't know it.

"Q. Did you get out on the right or left side of the car? A. Left.

"Q. When you got out did you notice the position of the car you were in in the road? A. It was on the right hand side.

"Q. Coming toward Harlan? A. Yes sir.

"Q. How far from the middle of the road? A. Over on the edge I believe over on the dirt off of the concrete.

"Q. When did you notice this? A. Just before I got out.

"Q. How fast was your car traveling before the accident? A. I don't know.

"Q. Was it driving fast, or slow? A. I don't know, but it was not going fast though.

"Q. You did not see the other car at all? A. No I did not.

"Q. When you got out of the car, your car was on its right side of the road? A. Yes, where it was supposed to be.

"Q. You don't think your car moved after the collision? A. No, I don't think it did."

It will be noted that every witness introduced by the plaintiffs and the defendants Lay and Lambert, including the plaintiffs themselves, placed the taxicab on the right-hand side of the road, and all the proof showed that it was traveling at a moderate rate of speed. The testimony of the witnesses and the physical facts showed conclusively that the collision occurred on the right-hand side of the road in the direction in which the taxicab was traveling. There is not a scintilla of proof tending to show any negligence on the part of Lambert, the driver of the taxicab.

At the conclusion of the evidence for the defendants Lay and Lambert, their codefendant, Freeman, introduced two witnesses, Hansel Parker and Andy Parker, and read the affidavits of John Lucy and Robert Tuttle. Freeman was present at the trial, but did not testify. As heretofore stated, his deposition, taken as if on cross-examination, was read by the plaintiffs. The statement of John Lucy, read as a deposition, cor-

roborated the testimony of the other witnesses. It merely stated that he arrived at the scene of the accident shortly after it occurred, and that the taxicab was entirely off the hard surfaced portion of the highway and on the dirt shoulder on its right-hand side. The left front wheel of the Freeman car was across the center line of the highway on its left-hand side. It was stipulated that Robert Tuttle, if present, would testify to the same facts set forth in the statement of John Lucy. Hansel Parker testified that he was walking with his brother, Andy Parker, on the left side of the road going toward Harlan, and that the accident happened about 50 yards from them. They were going to church. When the taxicab passed them its left wheels were over the center line of the road, and remained there until the collision. When he was asked if he noticed the position of the taxicab as it traveled toward Harlan, he said: "Well, it looked like from where I was at that when the car passed us that it was straddle of this black mark in the middle of the highway." He said the accident happened between 6 and 7 o'clock in the evening, and the headlights of both cars were burning. The Freeman car was on its right side of the road, and when he was asked if it ever crossed the black line on the left-hand side before it collided with the other car, he said: "Not that I noticed." He did not remember where the cars were sitting after the accident. He and his brother did not walk to the scene of the accident at once, but stood on the road and rolled cigarettes and waited several minutes before walking up the road. In the meantime, several passing cars had stopped, a crowd had gathered, the injured persons had been removed from the wrecked taxicab, and one of them had been taken away in a car. He was unable to recall anyone he saw at the scene of the accident, and did not tell anyone present that he had seen the wreck. He did not tell Freeman that he had seen the accident until two weeks before the trial in September, 1937. Andy Parker testified that he and his brother, Hansel, were on their way to church at Calloway when the collision occurred about 50 yards in front of them. The left wheels of the taxicab were across the center line of the road. He could see the black center line because it was still daylight. The headlights on the Freeman car were not burning. He and his brother stood on the side of the road about five minutes, and did not go to the place of the accident until several

automobiles had stopped and a crowd had gathered. He told no one present that he had seen the accident, and did not tell Freeman or any other person that he had seen it until some time in September, although he had talked with Freeman in April. He was asked what he and his brother talked about during the five minutes they stood on the road after the accident, and he said:

> "My brother said, 'Do you want to go on up there now or wait until somebody comes?' We didn't want to get there first. I never want to be the first to go to a wreck before somebody else gets there."

He stated that he was smoking a cigarette when the collision occurred. He finished it and rolled and lighted another one before he and his brother went to the place of the accident.

A careful reading of the testimony of these two witnesses discloses its unreliability and utter lack of probative value. Each witness contradicted himself in many important particulars, and they contradicted each other. One said the accident happened after dark, and the other said it happened during daylight. One said the lights of the Freeman car were burning, and the other that they were not burning. One could see the center line of the road at a distance of 150 feet from the lights of the car, the other because it was in the daytime. One of the few points on which they agreed was the improbable one that after seeing the wreck 150 feet away they stood on the side of the road for five minutes before going to the place where the accident happened. When pressed for definite answers as to the positions of the respective cars, they based them on surmise, conjecture and guesses. Their guesses are contradicted not only by the testimony of every other witness introduced, including the plaintiffs themselves, but by the proven and admitted physical facts. Under the circumstances, their testimony is so at variance with facts admitted by plaintiffs to be true as to deprive their entire testimony of evidentiary value. The following rule approved in Louisville & Nashville Railroad Company v. Welsh, 272 Ky. 120, 113 S. W. (2d) 879, 888, is applicable here:

> "When physical situations or matters of common knowledge point so certainly to the truth as to leave no room for a contrary determination, based on reason and common sense, such physical situation and reasonable probabilities are not affected by sworn

testimony which, in mere words, conflicts therewith.. The fact established by the situation itself and matters of common knowledge, so clearly that no one can reasonably dispute it, notwithstanding evidence to the contrary, must stand uncontroverted and uncontrovertible, condemning as false such contrary evidence, either upon the ground of mistake or something worse.''

We fail to find any evidence tending to show that Lambert, the driver of the taxicab, was guilty of negligence. It follows that the trial court erred in overruling appellants' motion for a directed verdict in their favor.

The judgment in each case is reversed, with directions to grant appellants a new trial, and for further proceedings consistent herewith.