Anthony Monroe POTTS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2003–SC–0500–MR.

Supreme Court of Kentucky.

Sept. 22, 2005.

346

Euva D. May, Assistant Public Advocate, Appellate Division, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, William Robert Long, Jr., Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice
COOPER.

A Montgomery Circuit Court jury convicted Appellant, Anthony Monroe Potts, of three counts of trafficking in a controlled substance in the first degree, KRS 218A.1412, and found him to be a persistent felony offender in the first degree, KRS 532.080(3). He was sentenced to a total of twenty years of imprisonment and appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), claiming that the trial court committed reversible error by: (1) overruling his motion for a directed verdict of acquittal; and (2) permitting the introduction of two inaudible videotapes and one inaudible audiotape of purported drug transactions. Finding no error, we affirm.

\*      \*      \*      \*      \*      \*

Appellant's convictions arose out of three drug transactions with Betty Hall, who was working as a confidential informant for the Kentucky State Police. Hall, who was previously charged with trafficking in marijuana, informed the Kentucky State Police that Appellant supplied her with crack cocaine. She agreed to cooperate in an investigation and began working with Detective Mike Martin of the Kentucky State Police. On August 29, 2001, Hall placed a call to Appellant's cellular telephone and arranged to meet with him to purchase approximately one gram of crack cocaine. Martin searched Hall and her vehicle prior to the transaction to ensure that she did not possess any crack cocaine that she could falsely claim to have obtained from Appellant. Martin then equipped Hall with an audio recording de-

vice, placed a video recording device inside her vehicle, and gave her $100.00 in cash. Martin followed Hall to a Wal–Mart parking lot, where he witnessed Appellant exit a separate automobile and sit down in the passenger side of Hall's vehicle. Appellant remained in Hall's vehicle for a short period of time, returned to the other automobile, and drove away. Martin followed Hall to a predetermined location, where he searched her a second time. Hall gave Martin approximately one gram of crack cocaine, and she no longer had the cash that Martin had given to her. At Appellant's trial, Hall testified that she gave Appellant the $100.00 in exchange for the crack cocaine.

On September 10, 2001, Hall contacted Appellant again and arranged to meet him in a car wash parking lot for another transaction. As before, Martin searched Hall and her vehicle, equipped Hall with an audio recording device, placed a video recording device inside Hall's vehicle, and provided her with $100.00 in cash. Martin followed Hall to the car wash and witnessed Appellant approach her vehicle. This time, Appellant leaned into the window of Hall's vehicle and briefly spoke with her. After Hall drove away, Martin followed her to a predetermined location, where he searched her and received approximately one gram of crack cocaine. Hall later testified that she gave Appellant the $100.00 in exchange for the crack cocaine.

Finally, on October 17, 2001, Hall again contacted Appellant on his cellular telephone and arranged a meeting in a Kroger parking lot. Martin followed the same procedures as with the two previous transactions, except this time he provided Hall with $250.00 in cash. Upon Hall's arrival at the Kroger parking lot, Martin observed an unfamiliar vehicle, which he later discovered was registered to Appellant's brother. Hall exited her own vehicle, walked toward the other vehicle, and sat in its front passenger seat. A short time later, Hall exited that vehicle, returned to her own vehicle, and drove away. Martin followed Hall to the debriefing location, where she provided him with an "eight ball," or approximately four grams, of crack cocaine. Hall testified at Appellant's trial that she gave Appellant the $250.00 in exchange for the "eight ball" of crack cocaine.

## I. SUFFICIENCY OF THE EVIDENCE.

■ Appellant claims that the trial court erred in overruling his motion for a directed verdict of acquittal because the evidence was insufficient to support his convictions for trafficking in a controlled substance. Appellant asserts that there are two types of sufficiency: "quantitative sufficiency," which is lacking when the evidence presented at trial fails to establish each element of the charged offense; and "qualitative sufficiency," which, according to Appellant, is lacking when the evidence presented at trial is so unreliable that a conviction could not be based on that evidence alone. Appellant does not dispute that the Commonwealth presented enough evidence at his trial to satisfy the "quantitative sufficiency" requirement. Rather, he argues that because the Commonwealth's primary witness, Betty Hall, suffered from bipolar disorder, admitted to drug use, and had a motive to fabricate her accounts of Appellant's drug transactions, her testimony was so lacking in credibility that it rendered the evidence "qualitatively insufficient" to support his convictions. We reject this proposition for several reasons.

■ Before addressing the validity of the so-called "qualitative sufficiency" issue, however, we note that this issue is unpre-

served. Appellant's motion for a directed verdict of acquittal failed to specify any grounds for the motion. CR 50.01 states, in pertinent part, "[a] motion for a directed verdict shall state the specific grounds therefor." We have previously applied CR 50.01 to criminal cases and have held that its requirement of "specific grounds" must be followed to preserve for appellate review a denial of a motion for a directed verdict of acquittal. *Pate v. Commonwealth,* 134 S.W.3d 593, 597–98 (Ky.2004); *Daniel v. Commonwealth,* 905 S.W.2d 76, 79 (Ky.1995). *See also Hicks v. Commonwealth,* 805 S.W.2d 144, 148 (Ky.App.1990). In *Pate,* the defendant moved for a directed verdict at the close of the Commonwealth's case and renewed his motion at the close of all evidence, but merely stated, "I make a motion for a directed verdict, Your Honor." 134 S.W.3d at 597. The motion in *Pate,* which we held to be inadequate to preserve the issue for appellate review, is factually indistinguishable from Appellant's motion in this case. Because this issue is unpreserved, we will review it only for a palpable error that affected Appellant's substantial rights and resulted in manifest injustice. RCr 10.26.

Appellant interprets dictum in *Schoenbachler v. Commonwealth,* 95 S.W.3d 830 (Ky.2003), to mean that a failure by the Commonwealth to present sufficient evidence to support a criminal conviction *always* constitutes palpable error. *Id.* at 836–37.[1] Our cases, however, are replete with affirmances of convictions where unpreserved errors pertained to the Commonwealth's failure to prove an element of the offense. *E.g., Pate,* 134 S.W.3d at 597–98 (failure to prove possession of all the chemicals or equipment necessary to manufacture methamphetamine—but also holding that there was no failure of proof);

*Baker v. Commonwealth,* 973 S.W.2d 54, 55 (Ky.1998) (failure to prove victim of unlawful imprisonment was exposed to risk of serious physical injury—but also holding that there was no failure of proof); *Daniel v. Commonwealth,* 905 S.W.2d 76, 79 (Ky.1995) (failure to prove child sex abuse victim was less than twelve years of age); *Knox v. Commonwealth,* 735 S.W.2d 711, 712 (Ky.1987) (same), *overruled on other grounds by Lane v. Commonwealth,* 956 S.W.2d 874 (Ky.1997); *Jackson v. Commonwealth,* 670 S.W.2d 828, 832 (Ky. 1984) (failure to prove value of stolen property—but vacating conviction on other grounds); *Marshall v. Commonwealth,* 625 S.W.2d 581, 583 (Ky.1981) (failure to prove date of prior conviction used for persistent felony offender enhancement). Appellant's interpretation of *Schoenbachler* not only runs contrary to each of these decisions, but also would essentially eliminate the well-established requirement that a party properly preserve a claim of insufficiency of evidence by informing the trial court of the relief requested and the reasons therefor. We therefore disagree with Appellant's interpretation of *Schoenbachler.*

According to Appellant, where evidence is found to be sufficiently lacking in credibility, the Due Process Clause requires reversal of a conviction primarily based on that evidence. Appellant cites *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), in support of that proposition. However, those decisions addressed only the *admissibility* of identification testimony, both holding that the reliability of the identification is the critical factor in determining its admissibility. *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253; *Neil,* 409

---

**1.** The discussion is dictum because the holding in *Schoenbachler* was that the Common-

wealth did prove every element of the offense beyond a reasonable doubt. *Id.* at 837–38.

U.S. at 199, 93 S.Ct. at 382. Neither opinion contains language suggesting that the Due Process Clause's standards for admissibility of identification testimony should be extended to govern appellate review of claims of insufficiency of evidence.

In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court articulated the standard of review required by the Due Process Clause with respect to the sufficiency of evidence to support a criminal conviction, holding that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19, 99 S.Ct. at 2788–89. Appellant claims that the *Jackson* standard embodies both "quantitative sufficiency" and "qualitative sufficiency." However, the issue in *Jackson* concerned only what Appellant would call "quantitative sufficiency," *i.e.,* whether a sufficient amount of evidence was produced to satisfy the prosecution's burden with regard to each element of the offense. *See id.* at 324–25, 99 S.Ct. at 2792. Furthermore, in elaborating on the standard required by the Due Process Clause, the Court stated:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Id.* at 319, 99 S.Ct at 2789 (footnotes omitted). *Jackson* thus placed limits on the standard it announced, preserving the jury's traditional role as arbiter of credibility. The United States Supreme Court confirmed these limitations years later:

> The *Jackson* standard, which focuses on whether any rational juror could have convicted, looks to whether there is sufficient evidence which, *if credited,* could support the conviction.... [U]nder *Jackson,* the assessment of the credibility of witnesses is *generally beyond the scope of review.*

*Schlup v. Delo,* 513 U.S. 298, 330, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995) (emphasis added). *Jackson,* therefore, reserves questions of credibility for the finder of fact and does not require an evaluation of the "qualitative sufficiency" of the evidence.

Appellant also argues that, on several occasions, our predecessor court reversed convictions based on evidence it found to be lacking in credibility. Of course, our more recent decisions discussing the standard of review for sufficiency of the evidence make clear that "[c]redibility and weight of the evidence are matters within the exclusive province of the jury." *Commonwealth v. Smith,* 5 S.W.3d 126, 129 (Ky.1999). *See also Estep v. Commonwealth,* 957 S.W.2d 191, 193 (Ky.1997); *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). Nevertheless, an examination of each of the cases relied upon by Appellant reveals that the reversals occurred not because the witnesses, themselves, lacked credibility, but because their testimony asserted the occurrence of physically impossible or inconceivable events. In *Weinel v. Commonwealth,* 302 Ky. 742, 196 S.W.2d 375 (1946), the complaining witness claimed that she was forced onto a

bed, verbally threatened, and raped. However, undisputed evidence showed that a person speaking in even an ordinary tone of voice at the location of the alleged rape could be heard in the adjacent room occupied at the time by the complaining witness's landlord. The landlord heard nothing. Our predecessor court concluded that the complaining witness's account of the events was physically "inconceivable," reasoning that "where the prosecuting witness relates circumstances which, in the light of human experience, preclude the possibility, or even the probability, of the crime having been committed, we will not hesitate to reverse the judgment and set aside the conviction." *Id.,* 196 S.W.2d at 378.

The reversal in *Weinel* was not premised upon the complaining witness's mere lack of credibility, but rather upon an understanding that testimony inconsistent with physical laws or basic human experiences is so lacking in probative value that the testimony, by itself, is utterly ineffectual in establishing the facts claimed by its proponent. *See Lambert v. Miller's Adm'r,* 277 Ky. 64, 125 S.W.2d 1019, 1023 (1939) ("Under the circumstances, their testimony is so at variance with facts admitted by plaintiffs to be true as to deprive their entire testimony of evidentiary value."). This rule does not apply to situations, like the case *sub judice,* where a witness's perception could have been impaired or circumstances indicate that a witness may have had a motive to fabricate. Rather, it only applies when a witness's testimony is contradicted by incontrovertible physical evidence or an undisputed matter of common knowledge.

> When physical situations or matters of common knowledge point so certainly to the truth as to leave no room for a contrary determination, based on reason and common sense, such physical situation and reasonable probabilities are not affected by sworn testimony which, in mere words, conflicts therewith. The fact established by the situation itself and matters of common knowledge, so clearly that no one can reasonably dispute it, notwithstanding evidence to the contrary, must stand uncontroverted and uncontrovertible, condemning as false such contrary evidence, either upon the ground of mistake or something worse.

*Louisville & Nashville R. Co. v. Welsh,* 272 Ky. 120, 113 S.W.2d 879, 888 (1937) (quoting *Groth v. Thomann,* 110 Wis. 488, 86 N.W. 178, 181 (1901)). Like the constitutional standard articulated in *Jackson,* this rule reserves determinations of witness credibility for the jury. *Hauser v. Pub. Serv. Co. of Ind.,* 271 Ky. 206, 111 S.W.2d 657, 659–60 (1937) ("It is true that the credibility of the witnesses is for the jury [but], . . . . where the facts testified to are utterly at variance with well-established and universally recognized physical laws, and therefore inherently impossible, the courts may refuse to submit the case to the jury."); *Webb v. Commonwealth,* 223 Ky. 424, 3 S.W.2d 1080, 1081 (1928) (setting aside a rape conviction because the complaining witness's account of the alleged rape was inconceivable in light of the physical facts and human experience, but "[l]eaving out of question the credibility of the witnesses and the contradictions in their testimony").

The other decisions relied upon by Appellant constitute nothing more than straightforward applications of this rule. Appellant cites *Kentucky Power Co. v. Dillon,* 345 S.W.2d 486 (Ky.1961), *overruled on other grounds by Perry v. Ernest R. Hamilton Associates, Inc.,* 485 S.W.2d 505, 509 (Ky.1972), for the proposition that a directed verdict is appropriate where the Commonwealth's evidence lacks "fitness to produce conviction." *Id.* at 489. Howev-

er, in discussing the "fitness" of the evidence in *Kentucky Power*, our predecessor court referred not merely to the credibility of the plaintiffs' witnesses, but to the objective circumstances that rendered their accounts of an electrical fire physically impossible. *Id.* ("The continuing absence of any indication of a defective condition is in accord with the undisputed evidence that a transformer of the kind used here cannot 'pop and crack like a shotgun,' or pop at all except during lightning, and there was no claim of a storm at that time . . . ."). The undisputed physical circumstances completely deprived the plaintiffs' testimony of its probative value. *Id.* ("We cannot, in good conscience, say that there was any evidence of probative value to show that the fire was caused by a defective or faulty condition of the defendant's wires and equipment."). Likewise, in *Coney Island Co. v. Brown*, 290 Ky. 750, 162 S.W.2d 785 (1942), the plaintiff's claim that she was injured when a river steamboat violently lurched out of a wharf was controverted by evidence proving that it was physically impossible for a large steamboat to start with any sudden movement. *Id.* at 786–87. Our predecessor court reaffirmed the factfinder's role in determining questions of credibility, but held that a directed verdict would be appropriate when a claim is based on testimony that is so contrary to scientific principles or common experience "as to be manifestly without probative value." *Id.* at 787–88.

■ Turning at last to the facts of the case *sub judice*, we hold that the evidence was sufficient in all respects to sustain Appellant's three convictions for trafficking in a controlled substance. Appellant asserts that Hall's testimony was the only evidence that he actually sold crack cocaine, and that her perception was questionable because of her bipolar disorder and admitted drug use. Appellant also questions Hall's credibility, alleging that the outstanding marijuana charges against her provided a motive to fabricate her testimony. Each of these arguments concerns an ordinary matter of credibility, which is within the exclusive province of the jury. *Smith*, 5 S.W.3d at 129; *Estep*, 957 S.W.2d at 193; *Benham*, 816 S.W.2d at 187. Appellant has cited nothing indicating that Hall's testimony was contradicted by incontrovertible physical or scientific evidence or by an undisputed matter of common knowledge. In fact, Hall's testimony was corroborated by all of the circumstances surrounding the three transactions: Detective Martin's descriptions of the events that occurred outside of the vehicles in each instance, Martin's searches of Hall before and after each transaction coupled with Hall's possession of crack cocaine after each transaction, and the videotape depicting Appellant inside Hall's vehicle during the first transaction and leaning into Hall's vehicle during the second transaction. On appellate review, "[i]f under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky.1983). In this case, it was not clearly unreasonable for the jury to find Appellant guilty of each of the three counts of trafficking. Accordingly, the trial court committed no error, palpable or otherwise, in overruling Appellant's motion for a directed verdict of acquittal.

## II. ADMISSION OF VIDEOTAPES AND AUDIOTAPE.

■ During Hall's testimony, the Commonwealth played for the jury videotapes of the August 29, 2001, and September 10, 2001, transactions, each recorded by the device placed inside Hall's vehicle. Because the October 17, 2001, transaction took place inside a different vehicle, it

could not be videotaped, and the Commonwealth instead played for the jury an audiotape recorded by the device placed on Hall's person. Appellant claims that each of these three tapes was inaudible and argues that, for this reason, their admission was reversible error. Appellant concedes that he did not preserve this issue by contemporaneous objection, but requests review for palpable error. KRE 103(e).

■■■ "It is within the discretion of a trial judge to decide whether because portions of a tape are inaudible or indistinct, the entire tape must be excluded." *Sanborn v. Commonwealth,* 754 S.W.2d 534, 540 (Ky.1988). Where "the inaudible portions are not so substantial as to render the recordings untrustworthy as a whole," the trial court generally acts within its discretion in admitting the recordings. *Norton v. Commonwealth,* 890 S.W.2d 632, 636 (Ky.App.1994). Here, portions of the audiotape of the October 17, 2001, transaction were indeed inaudible, but the inaudible portions were not so pervasive as to render the recording untrustworthy as a whole. Thus, the trial court did not err in its admission.

■■ The videotapes depicting the August 29, 2001, and September 10, 2001, transactions were largely inaudible. Nevertheless, the first videotape captured the visual image of Appellant sitting inside Hall's vehicle, and the second videotape showed Appellant leaning inside Hall's vehicle. In placing Appellant at the location of both crimes at the time they were occurring, the videotapes contained elements that were probative of the charges against Appellant and were thus properly admitted. *Cf. Johnson v. Commonwealth,* 90 S.W.3d 39, 46 (Ky.2002) ("While many parts of the tapes are completely inaudible, some of the parts of the tapes ... are sufficiently audible and probative of the

charges ...."). Moreover, a palpable error must be one that would have been obvious to the trial court. *Ernst v. Commonwealth,* 160 S.W.3d 744, 758 (Ky.2005). Here, despite the fact that Appellant's trial attorney reviewed the videotapes before trial, he failed to object to their admission, thus failed to put the trial court on notice that the videotapes would be inaudible. Each videotape was very brief, and any potential error arising from inaudibleness would not have been obvious to the trial court until the playing of the videotape was concluded.

Accordingly, the judgments of conviction and sentences imposed by the Montgomery Circuit Court are affirmed.

All concur.