Jared R. STEEN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2009–CA–000070–MR.

Court of Appeals of Kentucky.

July 30, 2010.

Thomas M. Ransdell, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Perry T. Ryan, Assistant Attorney General, Frankfort, KY, for appellee.

Before ACREE and STUMBO, Judges; LAMBERT,[1] Senior Judge.

*OPINION*

ACREE, Judge:

Appellant, Jared R. Steen, seeks reversal of the Jefferson Circuit Court's decision denying his motion for a directed verdict. He was sentenced to five years' imprisonment for the offense of manslaughter, and eight days for driving under the influence. Steen contends there was insufficient evidence for a reasonable juror to find him guilty. We disagree, and affirm the convictions.

On May 4, 2007, the appellant, Jared R. Steen agreed to give Robert Lyle a ride home from work at United Parcel Service. That ride ended abruptly and tragically, leaving Robert Lyle dead and Jared Steen severely injured. Robert Lyle died at the

---

1.  Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

scene and Steen was rushed to the University of Louisville Hospital.

While at the hospital, two separate tests were conducted to determine Steen's blood alcohol content. The first test was based on a blood sample taken by the University of Louisville Hospital about an hour and twenty-five minutes after the wreck. The result of the first test was a blood alcohol content level between 0.083 and 0.0899. The second test, conducted by the Kentucky State Police, was based on a sample taken about two hours and ten minutes after the wreck occurred. This test resulted in a blood alcohol content of 0.07.

Using the results of the two tests, the medical examiner, Dr. Burrows–Beckham, attempted to extrapolate what Steen's blood alcohol content would have been at the time of the incident. In her analysis, she used three conversion numbers, because each person has a different metabolic rate of absorption, making it impossible to come up with an exact number of what the blood alcohol content would be. Using the results of the first test and two different formulas, Dr. Burrows–Beckham calculated a potential blood alcohol range between 0.1055 and 0.1199. Applying the conversion formula to the second test, Dr. Burrows–Beckham calculated Steen's blood alcohol content to be between 0.1 and 0.11. Both of these calculations assume the alcohol in Steen's body was fully absorbed by his body at the time of the wreck. These numbers do not reflect the possibility Jared Steen ingested the alcohol just prior to the collision actually occurring and his body actually absorbing the alcohol after the crash.

Dr. Burrows–Beckham was not able to say with a "reasonable degree of medical certainty" that Steen was within the range she predicted based on her calculations. She was not able to commit to such a range because there are several variables that could impact the actual number, such as the amount and type of food in the stomach. However, Dr. Burrows–Beckham stated that this was the best test that could be used, since they did not have a sample taken immediately following the collision.

The appellant's requests for directed verdicts were denied and the Jefferson Circuit Court jury convicted Steen of manslaughter in the second degree and driving under the influence. Jared Steen was sentenced to five years' imprisonment for the offense of manslaughter, a $1,000 fine, and eight days for driving under the influence. The five-year sentence and fine were both probated. Following the trial, the appellant properly preserved and brought an appeal on the issue of the denial of his directed verdict.

■ The decision to deny a motion for directed verdict is reviewed based on the standard outlined in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky.1991), which followed both *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky.1983), and *Trowel v. Commonwealth*, 550 S.W.2d 530 (Ky.1977). The standard is as follows:

> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Benham*, 816 S.W.2d at 187.

■ Applying this standard we conclude that directed verdict was not warranted in this case. A reasonable juror could find the elements of manslaughter in the second degree as outlined in KRS 507.040 had been proven by the prosecution.

There is ample evidence in the record that could lead a reasonable juror to find guilt. The test results showing Steen had a blood alcohol level between 0.083 and

0.0899 an hour and twenty-five minutes and a level of 0.07 two hours and ten minutes after the crash coupled with the testimony of Dr. Burrows–Beckham provide an avenue for a juror to reach a guilty verdict. A reasonable juror could find Jared Steen's alcohol content was as high as 0.119 because of the calculations done by Dr. Burrows–Beckham. Based on the same testimony, a juror could further find an individual with blood alcohol content above a 0.1 level was under the influence of alcohol.

When the trial court considered the directed verdict motion, it was required to include consideration of Dr. Burrows–Beckham's testimony along with all "the evidence in the light most favorable to the prosecution[.]" *Potts v. Commonwealth,* 172 S.W.3d 345, 349 (Ky.2005), *citing Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). After hearing the variables that could affect the blood alcohol content of an individual, a juror could still reasonably arrive at the conclusion that Jared Steen was in the range described by Dr. Burrows–Beckham. If a juror could find this to be true, then he or she could also reasonably conclude Steen wantonly caused the death of Robert Lyle, based on his level of intoxication.

■ Furthermore, the *per se* level of intoxication is not to be introduced in any case outside a prosecution for driving under the influence. *Cormney v. Commonwealth,* 943 S.W.2d 629, 634 (Ky.App. 1996), *citing Walden v. Commonwealth,* 805 S.W.2d 102 (Ky.1991). There is no magic number for intoxication, the jury must determine based on the facts and circumstances of the case if the driver was "under the influence" sufficiently to have constituted wanton conduct. *Overstreet v. Commonwealth,* 522 S.W.2d 178, 179 (Ky. 1975). In this case, the jury was permit-

ted to infer from Dr. Burrows–Beckham's testimony what effect alcohol could have on a person with a blood alcohol level around 0.1 and its conclusion was reasonable that an individual with that amount of alcohol in his system would be under the influence.

Therefore, because a reasonable juror could find the appellant guilty of second-degree manslaughter as defined in KRS 507.040, the decision of the Jefferson Circuit Court is affirmed.

ALL CONCUR.