# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  OCTOBER 23, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0520-MR

JAMES STEVEN COYLE APPELLANT

ON APPEAL FROM OWEN CIRCUIT COURT
V.  HONORABLE REBECCA LESLIE KNIGHT, JUDGE
NO. 24-CR-00063

COMMONWEALTH OF KENTUCKY APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING IN PART AND VACATING IN PART**

James Coyle disregarded a stop sign and fled from police, leading officers on a two-mile chase during the busy "Highway 127 Yard Sale" in Owen County. After an oncoming officer forced Coyle to come to a stop, police discovered methamphetamine residue and drug paraphernalia in his vehicle.  Coyle was convicted of first-degree fleeing or evading, first-degree possession of a controlled substance, possession of drug paraphernalia, and being a first-degree persistent felony offender.  In accordance with the jury's recommendation, the circuit court sentenced Coyle to twenty-three years in prison.  Coyle now appeals as a matter of right.

## FACTS AND PROCEDURAL HISTORY

Owen County Sheriff's Deputy Frank Blackwell and Owenton City Police Officer Jimmy McIntosh were parked at the intersection of Highway 127 and Monterey Pike to monitor traffic during the annual 127 Yard Sale. In addition, Deputy Blackwell knew that James Coyle was staying in the area and had an active warrant for his arrest. Part of Deputy Blackwell's rationale for parking at that intersection was to look for Coyle while he patrolled traffic from the yard sale.

Around 7:00 p.m. on August 3, 2023, Coyle ran a stop sign at the intersection and turned right onto Highway 127, driving past Deputy Blackwell. Deputy Blackwell recognized Coyle, so he initiated a traffic stop. Officer McIntosh followed behind Deputy Blackwell. Upon pulling behind Coyle, Deputy Blackwell turned on his police cruiser's emergency lights. When Coyle did not stop within a few seconds, Deputy Blackwell activated his siren. Despite passing several locations in which he could have stopped, Coyle continued down Highway 127.

Deputy Blackwell called Deputy Blake Lewis to assist him because he knew Deputy Lewis was completing another traffic stop further south on Highway 127. When Deputy Lewis saw Coyle's car being chased by two police cruisers, he crossed into Coyle's southbound lane of travel to try to stop Coyle using a "box" maneuver. Coyle did not initially hit his brakes or stop his car when Deputy Lewis was approaching in his lane of travel. Deputy Lewis believed that Coyle was going to hit his car head-on if he did not change lanes

2

again. When Coyle was only 100 feet away, Lewis veered back into the northbound lane and Coyle swerved into the emergency lane.

The entire pursuit lasted about two miles. It occurred along a part of Highway 127 that is a curvy, two-lane road. The speed limit is fifty-five miles per hour, and Coyle drove between fifty-five and sixty miles per hour during the chase, not slowing down at any point before stopping his car. After Coyle stopped and put his hands out his window, police approached his car and arrested him. During a search incident to his arrest, officers found a red straw in Coyle's pocket and a wallet in the trunk of the car. The wallet contained Coyle's ID and a crystal-like residue, which later tested positive for methamphetamine.

An Owen Circuit Court jury convicted Coyle for first-degree fleeing or evading police, first-degree possession of controlled substances, possession of drug paraphernalia, and being a first-degree persistent felony offender. The jury recommended twenty years in prison for the feeling or evading conviction, enhanced by the first-degree PFO conviction, and three years for first-degree possession of a controlled substance, with the sentences to run consecutively. The trial court sentenced Coyle to twenty-three years in prison. This appeal followed.

## ANALYSIS

Coyle raises three arguments on appeal: (1) the trial court erred in denying his motion for directed verdict as to first-degree fleeing or evading; (2) the trial court impermissibly sentenced him to twenty-three years in prison,

which is in excess of the maximum sentence allowable by statute; and (3) the trial court erred in imposing jail fees.

## I. The trial court properly denied Coyle's motion for directed verdict as to first-degree fleeing or evading.

Coyle argues the trial court erred in failing to grant a directed verdict as to the first-degree fleeing or evading charge. Specifically, Coyle asserts that the Commonwealth failed to produce evidence that Coyle created a substantial risk of serious physical injury or death during the two-minute pursuit.

When presented with a motion for a directed verdict,

> the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991). On appeal, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Woods,* 657 S.W.3d 902, 906 (Ky. 2022) (quoting *Potts v. Commonwealth,* 172 S.W.3d 345, 349 (Ky. 2005)) (internal quotation marks omitted).

The provision under which Coyle was convicted of first-degree fleeing or evading police requires:

> while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer, and . . . [b]y fleeing or eluding, **the person is the cause, or creates**

4

**substantial risk, of serious physical injury or death to any person or property[.]**

Kentucky Revised Statute (KRS) 520.095(1)(a)(4) (emphasis added). The "act of fleeing" and the "substantial risk" created by fleeing are separate elements. *Bell v. Commonwealth,* 122 S.W.3d 490, 497 (Ky. 2003). Coyle does not dispute that he fled from police, and in fact the evidence is unrefuted that Coyle continued driving for approximately two miles after Deputy Blackwell pulled behind his car and activated his lights and sirens. Rather, Coyle argues that he did not create a "substantial risk" or "serous physical injury or death" by fleeing, as required by KRS 520.095(1)(a)(4).

The risk of "serious physical injury or death" created by a fleeing defendant must be "ample, considerable in degree or extent, and true or real; not imaginary." *Bell,* 122 S.W.3d at 497 (cleaned up). This inquiry is fact-specific and "depends on the proof and reasonable inferences that can be drawn from the evidence" of the pursuit, "with each case presenting its own unique circumstances." *Culver v. Commonwealth,* 590 S.W.3d 810, 817 (Ky. 2019).

Coyle emphasizes that he was driving at or near the speed limit, stayed in his lane, did not drive in a reckless or dangerous manner, and did not drive into oncoming traffic. In fact, it was Officer Lewis who drove into his lane and forced Coyle to swerve off the road to avoid a collision. Therefore, Coyle asserts that Officer Lewis created the substantial risk of serious physical injury or death.

5

Coyle led officers on a two-mile chase down a curvy, two-lane highway. One of the officers testified that there are portions of this two-mile stretch of highway where drivers do not have a clear line of sight of oncoming traffic. In addition, this pursuit occurred during the 127 Yard Sale, deemed the world's longest yard sale at 690 miles long and spanning 6 states.[1] All three officers involved in the pursuit testified that there was more traffic and were more people in the area given the yard sale. One officer observed pedestrians crossing the highway earlier in the day.

Officer Lewis, who drove his police car toward Coyle, testified that he drove his car head on toward Coyle to attempt to get Coyle to acknowledge he was there and force him to stop. Officer Lewis considered setting up spike strips, used by law enforcement to stop a fleeing vehicle, but quickly realized he did not have enough time to do so. He also testified that he was trained to get fleeing drivers off the road, and one of the methods used is a box maneuver where, with the assistance of other officers, a suspect is blocked in by police vehicles to prevent them from continuing. In addition, Officer Blackwell testified that as police officers they are trained to perform box maneuvers. Further, Officer Lewis testified that he was fearful and believed Coyle was going to hit him head on.

To reiterate, when presented with a motion for directed verdict a trial court must look at all evidence in the light most favorable to the Commonwealth. *Woods,* 657 S.W.3d at 906. Here the Commonwealth

---

[1] 127 Yard Sale, https://www.127yardsale.com/ (last accessed Oct. 10, 2025).

6

produced evidence demonstrating that the area was congested with traffic and pedestrians because of the yard sale, making the roadway and surrounding areas much busier than normal. There was a substantial risk that a pedestrian may have been seriously injured by Coyle's actions. Further, Coyle created a substantial risk of injury or death to Officer Lewis by continuing to drive toward him despite his lights and sirens being on to command Coyle to stop. Although Coyle and Officer Lewis each swerved, ultimately avoiding a collision, this does not diminish the substantial risk that Coyle created.

We also note that the jury was presented with both first- and second-degree fleeing or evading instructions. Second-degree fleeing or evading only requires a person to operate a motor vehicle with the intent to flee, and knowingly or wantonly disobeying a recognized direction to stop made by an officer. After hearing all the evidence, the jury convicted Coyle of first-degree fleeing or evading, despite having the option to find he only committed second-degree fleeing or evading. In considering the evidence as a whole, particularly in the light most favorable to the Commonwealth, it was not clearly unreasonable for a jury to find Coyle guilty of first-degree fleeing or evading. Therefore, the trial court did not err by denying Coyle's motion for a directed verdict.

## II. The trial court erred by imposing an illegal sentence pursuant to KRS 532.110(1)(c).

Next Coyle argues his sentence exceeds the twenty-year cap delineated in KRS 532.110(1)(c) and KRS 532.080(6)(b). The jury recommended five years enhanced to twenty years for first-degree fleeing or evading, three years for

first-degree possession of a controlled substance, and twelve months for possession of drug paraphernalia. The jury also recommended the sentences run consecutively for a total sentence of twenty-three years. The trial court sentenced Coyle in accordance with the jury's recommendation.

When a sentence exceeds the statutory maximum sentence, this creates a true sentencing error which can be raised for the first time on appeal. *See, e.g., Cummings v. Commonwealth,* 226 S.W.3d 62, 66 (Ky. 2007). KRS 532.110(1)(c) provides that

> [w]hen multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that: . . . (c) 1. Except as provided in paragraph (d) of this subsection, the aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed, except as described in KRS 533.060(2) or (3).

The Commonwealth concedes that the sentence for Coyle's convictions is capped at twenty years. The highest class of crime in the final judgment is first-degree fleeing or evading, a Class D felony at the time Coyle committed the offense. KRS 520.095.[2] After applying the persistent felony offender enhancement, this conviction carries a sentence of ten to twenty years. Therefore, the longest available sentence is twenty years, rendering the twenty-three-year aggregate sentence illegal. As such, the excess portion of Coyle's

---

[2] Since the time of the commission of these crimes, first-degree fleeing or evading has been amended to a Class C felony. KRS 520.095 (eff. July 15, 2024).

sentence is vacated and the case must be remanded to the trial court for imposition of the highest valid sentence, which is twenty years. *See Phon v. Commonwealth,* 545 S.W.3d 284, 309 (Ky. 2018); *Goldsmith v. Commonwealth,* 363 S.W.3d 330, 334 (Ky. 2012); *Miller v. Commonwealth,* 391 S.W.3d 857, 871 (Ky. 2013).

**III.    The trial court erred by imposing jail fees against Coyle.**

Finally, Coyle argues the trial court lacked authority to impose jail fees without the requisite evidence. Coyle failed to preserve this issue, but "since sentencing is jurisdictional it cannot be waived by failure to object. Thus, sentencing issues may be raised for the first time on appeal[.]" *Capstraw v. Commonwealth,* 641 S.W.3d 148, 161 (Ky. 2022) (citing *Travis v. Commonwealth,* 327 S.W.3d 456, 459 (Ky. 2010)). Therefore palpable error review is appropriate. *Capstraw,* 641 S.W.3d at 161.

"A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." Rule of Criminal Procedure (RCr) 10.26. Under our palpable error standard, we must ask "whether on the whole case there is a substantial possibility that the result would have been any different . . . . A palpable error must be so grave that, if uncorrected, it would seriously affect the fairness of the proceedings." *Davis v. Commonwealth,* 620 S.W.3d 16, 30 (Ky. 2021) (citations omitted).

9

In the final judgment, the trial court ordered Coyle to pay jail fees, including but not limited to booking fees, medical expenses, and daily incarceration fees. Coyle argues this was ordered in error because there was no evidence of a jail fee policy in the record. As such, he asserts that the portion of the final judgment ordering jail fees should be vacated.

In *Capstraw*, we held that a trial court may not impose jail fees at sentencing without "some evidence presented that a jail fee reimbursement policy has been adopted by the county jailer with approval of the county's governing body in accordance with KRS 441.265(2)(a)." 641 S.W.3d at 161-62. KRS 441.265(2)(a) allows a jailer to adopt a prisoner fee and reimbursement policy. That policy must be approved by the county's governing body. *Id.* Because there was no evidence that a jail fee reimbursement policy had been adopted by the county jailer with approval in accordance with KRS 441.265(2)(a), the jail fees imposed against the defendant were vacated. *Capstraw*, 641 S.W.3d at 162. Later in *Ford v. Commonwealth*, this Court reiterated that "[i]f the Commonwealth does not put on evidence demonstrating the existence of such a policy with the concomitant approval, then the evidentiary burden for jail fees is not met and they cannot be imposed." 709 S.W.3d 203, 206 (Ky. 2025).

This Court has made it abundantly clear that evidence of a jail reimbursement policy is necessary in order for a sentencing court to impose jail fees:

> To be blunt, we cannot fathom why the Commonwealth would find it difficult to submit a jail reimbursement policy into evidence, which

10

presumably would exist in some written format, as well as the public record of said policy being approved by the county's governing body which also presumably would exist in some written format. Nor do we believe *Capstraw* was ambiguous in requiring such evidence that would somehow confuse a trial court as to what evidence would suffice to impose jail fees. If the jailers of a given circuit have not promulgated a jail reimbursement policy pursuant to KRS 441.265(2)(a), or if the governing bodies of the counties constituting that circuit have not approved said policies, then the trial court must accept that fact and accept that it may not impose jail fees in the applicable cases. If, however, a jail reimbursement policy exists and has been approved by the appropriate governing body in accordance with KRS 441.265(2)(a), then there is no excuse for evidence of such not to be in the record. That is what *Capstraw* unambiguously requires, and we reaffirm it.

*Id.* Here, there is no such evidence of a jail reimbursement policy in the record. As such, the portion of the sentence imposing jail fees must be vacated.

Coyle emphasizes that in 2022, prior to the commission of these crimes, the Legislature amended KRS 441.265. Previously, in relevant part, the statute stated: "[a] prisoner in a county jail shall be required by the sentencing court to reimburse the county for expenses incurred by reason of the prisoner's confinement . . . ." After its 2022 amendment, the statute now reads: "[a] prisoner in a county jail shall be required beginning from the prisoner's booking date to reimburse the county for expenses incurred by reason of the prisoner's confinement . . . ." Coyle argues that the omission of "the sentencing court" from the revised statute indicates that sentencing courts now lack authority to impose jail fees. This is an overreading of the amended statutory language. The decision to substitute "beginning from the prisoner's booking date" for "by the sentencing court" was merely a clarification that jail fees begin accumulating as soon as an inmate arrives at the jail.

11

In addition, KRS 532.352 provides that "[t]he sentencing court may order a person who is sentenced to a term of incarceration . . . to reimburse the state or local government for the costs of his incarceration." KRS 532.358 also states that a "prisoner who has completed his sentence in a county or regional jail . . . shall, from the day incarceration ceases and within the time and amount designated by the sentencing court, pay . . . reimbursement for his incarceration to the state or local government . . . ." These statutes are all connected and create a statutory scheme for jail fees to be imposed, collected, and reimbursed.

In *Jones v. Clark County,* a pretrial detainee spent fourteen months in the Clark County Jail. 635 S.W.3d 54, 55 (Ky. 2021). Upon his release, he was billed for jail fees, but a few weeks after he was released he was cleared of all charges. *Id.* He filed suit, arguing that only the sentencing court could order him to pay jail fees. *Id.* This Court agreed, holding that a jail cannot bill for jail fees without the order of a sentencing court. *Id.* at 60. The *Jones* Court based its decision on KRS 411.265, 532.352, and 532.358, which, at the time of the *Jones* decision, all contained reference to a "sentencing court" when describing how jail fees are imposed. As the Court explained, a prisoner only owes jail fees if they are convicted. *Id.* at 59. Here, a person would only ever be ordered to pay jail fees if they had been convicted of a crime, and thus sentenced by a sentencing court. Coyle's argument that the statutory amendment stripped the trial court here of imposing jail fees lacks merit.

However, the issue of the absence of the jail reimbursement policy in the trial court record remains. Because *Capstraw* and *Ford* are clear, the jail fee portion of the judgment must be vacated. We are unconvinced by the Commonwealth's argument that because this case is already being remanded to correct the sentencing error described in Section II above, it should thus be entitled to present evidence of the jail fee reimbursement policy on remand. The Commonwealth bears the burden of presenting this evidence to a trial court, and it already had the opportunity to do so.

## **CONCLUSION**

Based on the foregoing, we remand this case to the Owen Circuit Court with instruction to impose the highest available sentence pursuant to KRS 532.0110(1)(c), twenty years, and to vacate the portion of the judgment whereby jail fees are imposed.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, Keller, and Nickell, JJ., concur. Thompson, J., concurs in result only.

COUNSEL FOR APPELLANT:

Robert C. Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Ryan D. Mosley
Assistant Solicitor General