Lawrence Elmer **PATE**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

No. 2002–SC–0890–MR.

Supreme Court of Kentucky.

May 20, 2004.

As Modified July 23, 2004.

Amy Michelle Daniel, Erlanger, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Carlton S. Shier, Assistant Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice KELLER.

## I. INTRODUCTION

A Pendleton Circuit Court jury found Appellant, Lawrence Elmer Pate (a/k/a Tommy Pate), guilty of Manufacturing Methamphetamine, and the trial court, in accordance with the jury's recommendation, imposed a twenty (20) year sentence of imprisonment. Appellant appeals to this Court as a matter of right[1] and contends (1) the evidence was insufficient to warrant his conviction; (2) the trial court erred in forcing Appellant's wife to testify after she invoked her spousal privilege; (3) the trial court erred in denying Appellant's Motion for a New Trial, and (4) the trial court erred in failing to suppress evidence obtained as the result of a warrantless search of Appellant's vehicle. A review of the record reveals Appellant's contentions to be meritless, and we affirm his conviction.

## II. BACKGROUND

On May 9, 2002, Kathy Pate (a/k/a Katherine Pate), Appellant's wife, who had come to the Pendleton County Sheriff's Office to make a domestic violence complaint against Appellant, informed Deputy Sheriff Craig Peoples that on the previous weekend, she, Appellant, and Alicia Aulick Gregg (a/k/a Alicia Aulick or Alicia Gregg) had gone to Illinois and returned with a tank of anhydrous ammonia that Appellant stored behind Alicia Gregg's trailer-residence. She also informed Deputy Peoples that Appellant was armed with a .38 handgun and provided him with a description of Appellant's vehicle and its license plate number.

Deputy Peoples testified that he proceeded immediately to Gregg's residence because of the extremely volatile nature of anhydrous ammonia. He located the tank, discovered that the anhydrous ammonia was housed in an unapproved container,

1. KY. CONST. § 110(2)(b); RCr 12.02.

and based upon the discoloration of the tank's brass fittings, he determined that the tank created a risk of exploding. He contacted the Fire Department and the Drug Enforcement Administration to facilitate the destruction of the tank.

A short time later, Deputy Peoples noticed a vehicle, much like the one that Kathy Pate had described as Appellant's, approaching Gregg's residence. The vehicle stopped, as if to turn around, and Deputy Peoples drove up behind the vehicle, blocking it, confirmed the license plate number, and recognized the driver as Appellant. He then ordered Appellant out of the car and onto the ground where he was handcuffed and placed under arrest. Alicia Gregg was a passenger in Appellant's vehicle.

Deputy Peoples frisked Appellant, attempting to locate the .38 weapon that Kathy Pate had stated Appellant would be carrying. He did not find the handgun; however, he found a pocket knife on Appellant's person and a search of the car revealed a quantity of .38 shells. The search of the vehicle also revealed an array of methamphetamine precursors. Specifically, Deputy Peoples discovered camping fuel, a butane torch, table salt, two packs of lithium batteries, Rooto drain opener, STP Oil Treatment, three boxes of pseudoephedrine, three boxes of suphedrine, five boxes of nasal decongestant, a plastic tea jug, mixing spoons, and plastic tubing. Receipts, in the name of Katherine Pate, for nasal decongestant and muriatic acid[2] were also found in the car, along with maps of all Wal–Mart and Dollar General Store locations within a fifty-mile radius of Cincinnati, Ohio.[3] Appellant was charged with Manufacturing Methamphetamine and Carrying a Concealed Deadly Weapon.[4]

## III. ANALYSIS

### A. Directed Verdict

■ Claiming insufficiency of the evidence, Appellant contends that he was entitled to a directed verdict on the charge of Manufacturing Methamphetamine. We review a motion for directed verdict under the standard set forth in *Commonwealth v. Benham:*[5]

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserve[e] to the jury questions as to

2. The muriatic acid was later located in a storage facility. Kathy Pate had informed the police of the storage unit, provided them with a key, and gave the police permission to enter the unit. Therein, the police found a plastic container of muriatic acid. Appellant admitted at trial that the muriatic acid found in the storage facility belonged to him; he claimed, however, that he intended to use it to clean stains from a concrete porch and not for use in the manufacture of methamphetamine.

3. The significance of the maps was explained by Deputy Peoples during direct examination by the Commonwealth:
 "The significance [of the maps] is they can go from store, to store, to store to buy their amphedrine or any other by-products or precursors, and they don't throw up any red flags, and the police are not notified if you buy the over allotted number of boxes."

4. Appellant was acquitted of the charge of Carrying a Concealed Deadly Weapon.

5. Ky., 816 S.W.2d 186 (1991).

the credibility and weight to be given to such testimony.[6]

■ Appellant was convicted of violating subsection (1)(b) of KRS[7] 218A.1432 which reads as follows:

(1) A person is guilty of manufacturing methamphetamine when he knowingly and unlawfully:

(a) Manufactures methamphetamine; or

(b) Possesses the chemicals or equipment for the manufacture of methamphetamine with the intent to manufacture methamphetamine.

(2) Manufacture of methamphetamine is a Class B felony for the first offense and a Class A felony for a second or subsequent offense.

In *Kotila v. Commonwealth*,[8] we held that a person must possess *all* of the chemicals, as opposed to *any* of the chemicals, or *all* of the equipment necessary to manufacture methamphetamine in order to be properly convicted under KRS 218A.1432(1)(b).[9] Thus, a trial court should direct a verdict in the defendant's favor if the Commonwealth fails to show that the defendant possessed either *all* of the chemicals or *all* of the equipment necessary to manufacture methamphetamine.

■ Appellant contends that the instant case is just the scenario contemplated by *Kotila*. Because it is undisputed that Appellant did not possess all of the equipment necessary to manufacture methamphetamine, he claims that he was entitled to a directed verdict when the Commonwealth failed to present evidence that he "possessed" anhydrous ammonia, a critical ingredient in the manufacture of methamphetamine.

First, we note that Appellant did not preserve this issue for our review. Although his lawyer moved for a directed verdict at both the conclusion of the Commonwealth's case and at the conclusion of all of the evidence, he did not state any grounds for the motion, much less specific grounds. At the conclusion of the Commonwealth's case, he merely stated, "I make a motion for a directed verdict, Your Honor," and at the conclusion of all of the evidence,[10] he simply stated, "For the record, we would renew our motion for a directed verdict." These utterances were not sufficient. CR[11] 50.01 requires that a directed verdict motion "state the specific grounds therefor[,]"[12] and Kentucky appellate courts have steadfastly held that failure to do so will foreclose appellate

---

**6.** *Id.* at 187.

**7.** Kentucky Revised Statutes.

**8.** Ky., 114 S.W.3d 226 (2003).

**9.** *Id.* at 240–41 ("KRS 218A.1432(1)(b) applies only when a defendant possesses *all* of the chemicals *or all* of the equipment necessary to manufacture methamphetamine.").

**10.** *Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525, 529 (1977) ("In effect, therefore, a motion for directed verdict made only at the close of one party's evidence loses any significance once it is denied and the other party, by producing further evidence, chooses not to stand on it.").

**11.** Kentucky Rules of Civil Procedure.

**12.** CR 51.01 reads as follows:

A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. *A motion for a directed verdict shall state the specific grounds therefor.* The order of the court granting a motion for a directed verdict is effective without any assent of the jury. (emphasis added).

review of the trial court's denial of the directed verdict motion.[13] Accordingly, we find that the issue of whether the trial court erred in denying Appellant's directed verdict motion was not properly preserved for our review.

■ But, even if we disregard the lack of preservation and review this claimed error under RCr[14] 10.26,[15] the evidence was sufficient for the jury to convict Appellant of Manufacturing Methamphetamine because the dispositive question is whether the evidence was sufficient to support a finding by the jury that Appellant possessed anhydrous ammonia at the time of his arrest, and we find that it was.

■ The definition of "possession" under the Kentucky Penal Code[16] only applies to penal code offenses,[17] and KRS Chapter 218A does not define "possess" or any of its cognate forms. Consequently, we employ the common meaning of "possess."[18] The AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed.2000) defines "possess" as "[t]o have as property; own." In other words, if a person owns; he possesses. Here, Kathy Pate's statements placed the tank's ownership in Appellant.

■ Additionally, we have held that "possession" for purposes of KRS Chapter 218A includes both actual and constructive possession.[19] "To prove constructive pos-

---

13. *Daniel v. Commonwealth*, Ky., 905 S.W.2d 76, 79 (1995) ("After a review of the record, this Court finds this issue is not properly preserved for appellate review. The sole ground in seeking a directed verdict given by Appellant was that the prosecution had asked leading questions. Pursuant to CR 50.01 '[a] motion for directed verdict shall state specific grounds therefor.' "); *Temple v. Helton*, Ky. App., 571 S.W.2d 647, 649 (1978) ("However, the motion for directed verdict was not accompanied by a statement of the 'specific grounds therefor.' CR 50.01. Failure to specify the grounds for a directed verdict forecloses appellate review of the circuit court's denial of the motion for directed verdict."); *Hercules Powder Co. v. Hicks*, Ky., 453 S.W.2d 583, 589 (1970) ("CR 50.01 provides in pertinent part: 'A motion for a directed verdict shall state the specific grounds therefor.' Failure to specify the ground or grounds for a directed verdict forecloses a party's right for appellate review of the court's denial of the motion for directed verdict."); *Gulf Oil Corp. v. Vance*, Ky., 431 S.W.2d 864, 866 (1968) ("In the record under consideration, there is nothing to show the insufficiency pointed out to the trial court.... The necessity of maintaining an orderly administration of justice by following such rules is justified despite the harsh results that may occasionally obtain. The record does not show any grounds for either of the motions made; therefore, there is nothing to do but affirm the judgment.").

14. Kentucky Rules of Criminal Procedure.

15. RCr 10.26 provides:

A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

16. KRS 500.080(14).

17. *Beaty v. Commonwealth*, Ky., 125 S.W.3d 196, 211 (2003).

18. *Kentucky Unemployment Ins. Co. v. Jones*, Ky.App., 809 S.W.2d 715, 716 (1991) ("When there is no specific statutory definition, words of a statute shall be construed according to their common and approved usage."); KRS 446.080(4).

19. *Houston v. Commonwealth*, Ky., 975 S.W.2d 925, 927 (1998) ("Kentucky courts have continued to utilize the constructive possession concept to connect defendants to illegal drugs and contraband."); *Franklin v. Commonwealth*, Ky., 490 S.W.2d 148, 150 (1972) ("Two or more persons may be in possession of the same drug at the same time and this possession does not necessarily have to be actual physical possession. It may be constructive as well as actual.").

session, the Commonwealth must present evidence which establishes that the contraband was subject to the defendant's dominion and control."[20] Appellant secreted the tank in a box behind Alicia Gregg's trailer; its location apparently known only to Appellant, Kathy Pate, and Alicia Gregg. Clearly this situation allowed Appellant to exercise a high degree of control over the tank. His control of the tank did not need to be exclusive.[21]

We find no merit in Appellant's assertions regarding his wife's credibility. Issues of credibility are solely within the purview of the finder of fact and a reviewing court will not substitute its judgment for the jury's on such matters. The evidence presented by the Commonwealth included (1) testimony by Deputy Peoples that he had received information that Appellant, Kathy Pate, and Alicia Gregg had placed a tank of anhydrous ammonia behind Alicia Gregg's residence; (2) Appellant was with Alicia Gregg when he was stopped; and (3) he was on the road to Alicia Gregg's residence in a vehicle which contained all of the necessary ingredients, except for anhydrous ammonia, with which to manufacture methamphetamine. The anhydrous ammonia was at Alicia Gregg's trailer; presumably Appellant's destination at the time of his arrest.

In *Varble v. Commonwealth*,[22] we held that where a defendant was found in possession of all of the other chemicals necessary to manufacture methamphetamine and there was sufficient evidence to base a

belief that the defendant had possessed anhydrous ammonia at the same time, then it was for the jury to decide whether he possessed those same chemicals at the same time that he possessed the anhydrous ammonia. We stated: "The requirement is that the chemicals or equipment be possessed simultaneously, not that they be possessed at the time of the arrest."[23] In the present case, the jury could have reasonably concluded that Appellant possessed the tank of anhydrous ammonia at the same time that he possessed the other methamphetamine precursors found during the search of his vehicle, and therefore, it was reasonable for the jury to conclude that Appellant possessed all of the chemicals necessary to manufacture methamphetamine.

■ Appellant also claims that there was insufficient evidence to find that he had "intent" to manufacture methamphetamine as required under KRS 218A.1432(1)(b). We disagree; "[t]he jury is allowed reasonable latitude in which to infer intent from the facts and circumstances surrounding the crime."[24] Here, because Appellant possessed such large quantities of the methamphetamine precursors and maps were found in Appellant's vehicle listing all locations of Wal-Marts and Dollar General Stores within a fifty-mile radius, such an inference was clearly permissible. We therefore hold that it was reasonable for the jury to find

**20.** *Burnett v. Commonwealth,* Ky., 31 S.W.3d 878, 881 (2000) (citing *Hargrave v. Commonwealth,* Ky., 724 S.W.2d 202, 203 (1986),cert. denied, 484 U.S. 821, 108 S.Ct. 81, 98 L.Ed.2d 43 (1987)).

**21.** *Franklin,* 490 S.W.2d at 150 ("[T]he general rule relating to the possession of dangerous drugs is that the possession need not be exclusive. Two or more persons may be in possession of the same drug at the same time and

this possession does not necessarily have to be actual physical possession. It may be constructive as well as actual.").

**22.** Ky., 125 S.W.3d 246 (2004).

**23.** *Id.* at 254.

**24.** *Simpson v. Commonwealth,* Ky., 759 S.W.2d 224, 226 (1988)

that Appellant had the requisite intent to manufacture methamphetamine.

### B. Spousal Testimony Privilege

 Next, Appellant contends that the trial court erred in failing to permit Kathy Pate to assert her spousal testimony privilege—also referred to as "adverse testimony privilege"[25]—under KRE[26] 504(a) and refuse to testify against him. Appellant admits that this claimed error is not preserved. Regardless, whether or not the trial court erroneously refused to allow Kathy Pate to assert her privilege is immaterial; it was her privilege that she was attempting to assert, not his. Appellant had every opportunity to assert his own adverse testimony privilege under KRE 504(a) in order to prevent his wife from testifying against him. Appellant made no effort to do so; thus, Appellant's failure to assert his own privilege precludes review of this issue.

In essence, Appellant contends that the trial court's denial of Kathy Pate's spousal testimony privilege was somehow a violation of his rights. We fail to see how Appellant has standing to assert his wife's privilege, and Appellant does not offer any authority in support for this proposition. In addition, we agree with the Commonwealth's contention that Appellant's failure to assert his adverse testimony privilege to preclude Kathy Pate from testifying could very well have been a trial strategy. Kathy Pate did not testify voluntarily, and the prosecutor was granted permission to treat her as a hostile witness. Based on Kathy Pate's reluctance to testify against him, it is certainly possible that Appellant assumed that her testimony overall might be beneficial to his case.

 Finally, we would note that there is no privilege under KRE 504 when "[i]n any criminal proceeding . . . sufficient evidence is introduced to support a finding that the spouses conspired or acted jointly in the commission of the crime charged."[27] By Kathy Pate's own admission, she accompanied Appellant on his trip to acquire the anhydrous ammonia. Thus, it is doubtful if Kathy Pate was entitled to assert the spousal privilege, or if Appellant, himself, could assert the privilege and prevent her from testifying against him.

We find no merit in this claim of error.

### C. Newly–Discovered Evidence

 Appellant next claims that the trial court erred in denying his Motion for New Trial based on newly discovered evidence regarding the competency of Kathy Pate. Appellant brought the motion pursuant to RCr 10.02(1) and 10.06(1), which permits a new trial on the basis of newly discovered evidence. Initially, we observe that Appellant's Motion for a New Trial was filed on January 6, 2003, which was more than three months after the jury's verdict on September 30, 2002. Accordingly, Appellant's appeal from the judgment of conviction is an improper vehicle to assert error in the trial court's ruling upon his new trial motion,[28] and we thus

---

**25.** ROBERT B. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 5.10[2], at 365 (4th ed.2003).

**26.** Kentucky Rules of Evidence.

**27.** KRE 504(c)(1).

**28.** RCr 12.02(3):

The time within which an appeal may be taken shall be thirty (30) days after the date of entry of the judgment or order from which it is taken, subject to Rule 12.06, but *if a timely motion has been made for a new trial an appeal from a judgment of conviction may be taken within thirty (30) days after the date of entry of the order denying the motion; providing, however, that in the case of a motion for new trial made later than five (5) days after return of the verdict, the appeal must be from the order overruling*

will not address the merits of that allegation. However, because Appellant also asserts that the introduction of his wife's testimony constituted palpable error justifying relief notwithstanding his failure to make a contemporaneous objection, we will briefly address that claim. Appellant asserts on appeal that he had discovered after his trial that his wife was incompetent based upon documents provided by her; however, these documents do not appear in the record before this court. Apparently, these documents demonstrate that Pate was diagnosed with bipolar affective disorder and borderline personality disorder. In its denial of Appellant's new trial motion, the trial court held that Kathy Pate's competency was not contested at trial and that challenging her competency after the trial was not sufficient to fall within the purview of the "new evidence" exception. In addition, given that the witness in question was Appellant's own wife, we doubt that evidence relating to her mental condition would constitute "newly discovered" evidence, and we again observe that the failure to object to his wife's testimony may have been trial strategy. In any event, however, as the purported "new evidence" has not been placed in the record before us, we defer to the determination of the trial court, and we perceive no palpable error justifying relief under RCr 10.26.

### D. Suppression of Evidence

▓▓▓▓ Finally, Appellant contends that the trial court committed reversible error in failing to grant Appellant's Motion to Suppress evidence obtained as a result of the warrantless search of his vehicle. Appellant claims (1) that the stop was not justified by a reasonable articulable suspicion or probable cause, and thus, the ensuing warrantless and consentless search was improper; (2) that his arrest was not justified by probable cause and therefore, the search of his vehicle was not incident to a lawful arrest; and (3) that the evidence from the search should have been suppressed as fruit of the poisonous tree.

The Commonwealth contends that the trial court properly denied Appellant's Motion to Suppress because Deputy People's stop was based on a reasonable articulable suspicion, probable cause existed for Appellant's arrest, and the search was, therefore, proper. The Commonwealth maintains that the Officer reasonably suspected that Appellant had been involved in the manufacture of methamphetamine based on the tank of anhydrous ammonia he had just discovered on the property which Appellant was approaching. Further, the officer had information that Appellant was in possession of a weapon, and he merely took necessary precautions in order to ensure his own safety. Once Appellant was stopped and arrested, the Commonwealth asserts that the search was incident to a lawful arrest and the fruits of that search were properly presented to the jury.

▓▓▓▓ The trial court found that the connection between Appellant and the anhydrous ammonia tank, as well as his presence in the vicinity of the tank and in the identified vehicle, was enough to provide Deputy Peoples with probable cause to stop Appellant's vehicle. We agree with the trial court. At the very least, this information was sufficient to warrant a *"Terry"* [29] stop based on a reasonable suspicion that Appellant was involved in

---

*or denying the motion,* and the review on appeal shall be limited to the grounds timely raised by the motion as provided by Rule 10.06.

(Emphasis added).

**29.** Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

criminal activity. In *Terry v. Ohio*,[30] the Supreme Court established the articulable reasonable suspicion standard, which requires less proof than the probable cause standard. In *Deberry v. Commonwealth*,[31] this Court stated that "officers are permitted to make brief stops or seizures of persons for purposes of investigation when the circumstances are such that the action appears reasonable.... In such cases no probable cause need exist at the time for believing the person stopped had actually committed a crime."[32] Whether an officer had adequate "reasonable suspicion," to engage an individual in a *Terry* stop is determined on appeal under a *de novo* standard of review.[33] Deputy Peoples had been informed by a reliable source that Appellant was engaged in criminal activity and would be carrying a weapon. Deputy Peoples had independently confirmed the presence of the anhydrous ammonia at the Gregg residence that Kathy Pate had linked to Appellant. Appellant was approaching the Gregg residence. So, Deputy Peoples had a reasonable articulable suspicion that Appellant was engaged in criminal activity, and in order to ensure his own safety, he reasonably believed that it was necessary to order Appellant out of the car and onto the ground. After Appellant got out of the car and left the driver's side door open, Deputy Peoples approached the car, and the methamphetamine precursors in the vehicle came into plain view. In the context of the information that Kathy Pate had provided to Officer Peoples regarding the anhydrous ammonia, his discovery of the anhydrous ammonia tank on the Gregg property, and the fact that Appellant was approaching the Gregg property with Alicia Gregg in a car filled with methamphetamine precursors, we find that under the totality of the circumstances, Deputy Peoples had probable cause to believe that Appellant was manufacturing methamphetamine and, thus, probable cause to arrest him. Although not argued by the Commonwealth, we would add that Kathy Pate's statement that Appellant possessed anhydrous ammonia, together with Deputy Peoples' knowledge that the anhydrous ammonia was in an unapproved container, was sufficient to establish probable cause that Appellant committed a felony and therefore justified Appellant's arrest by Deputy Peoples and the incidental search of Appellant's vehicle.[34] Accordingly, the search was incident to a lawful arrest and the trial court properly denied Appellant's motion to suppress.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Pendleton Circuit Court.

All concur.

30. *Id.*

31. Ky., 500 S.W.2d 64, 66 (1973).

32. *Id.*

33. *Commonwealth v. Banks*, Ky., 68 S.W.3d 347, 349 (2001).

34. KRS 250.489; KRS 250.991 ("Any person who knowingly possesses anhydrous ammonia in a container other than an approved container in violation of KRS 250.489 is guilty of a Class D felony....").