# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

*THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28 (4) (c), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS AUTHORITY IN ANY OTHER CASE IN ANY COURT OF THIS STATE.*

RENDERED: AUGUST 24, 2006
NOT TO BE PUBLISHED

Supreme Court of Kentucky FINAL

2005-SC-000722-MR

DATE 10-24-06 Ex A Graw H D.C.

PAUL AMBURGEY                                                    APPELLANT

ON APPEAL FROM PIKE CIRCUIT COURT
V.                          HONORABLE EDDY COLEMAN, JUDGE
NO. 01-CR-0001-001

COMMONWEALTH OF KENTUCKY                                         APPELLEE

**MEMORANDUM OPINION OF THE COURT**

<u>AFFIRMING</u>

Appellant, Paul Amburgey, was convicted of two counts of rape in the first degree by a Pike County Circuit Court jury. Appellant was sentenced to twenty years on each count, to be served concurrently. This appeal is as a matter of right.[1] Appellant asserts that there was insufficient evidence presented by the Commonwealth and that he should have had a directed verdict of not guilty. Appellant moved for a directed verdict at the close of the Commonwealth's evidence in chief and again at the close of all the evidence, thereby preserving the issue for our review.[2] Specifically, Appellant contends that the testimony of an eight-year-old child is legally insufficient to establish his guilt beyond a reasonable doubt.

---

[1] Ky. Const. § 110(2)(b).
[2] <u>Pate v. Commonwealth</u>, 134 S.W.3d 593 (Ky. 2004).

On June 18, 2004, Social Services removed eight-year-old S.J., the rape victim in this case, from her home due to her biological parents' involvement with drugs. She was placed with her maternal aunt, Dottie Amburgey, who was married to Appellant. S.J.'s younger brother, C.J. (age 3), and an infant, E.J., were also placed in Appellant's home. On November 30, 2004, the Kentucky State Police (KSP) received a report from the Children's Hospital in Cincinnati, Ohio, that S.J. had been treated for injuries that were consistent with a sexual assault. The officer who initially responded to the hospital's report used a rape kit to collect swab samples from S.J for laboratory examination.

At a later time following S.J.'s hospital visit, KSP officers were informed by Appellant's wife that on November 29, 2004, she noticed the victim "walking funny." This prompted Appellant's wife to ask S.J. what was wrong. S.J. told her that she hurt herself on the preceding Friday by inserting a screwdriver into her vagina because she thought her aunt, Appellant's wife, no longer loved her. Upon hearing this information, Appellant and his wife took S.J. to the children's hospital in Cincinnati, Ohio, for treatment.

On the same day that the KSP received the report from the children's hospital in Cincinnati, a search of the Amburgey residence was conducted. The search was videotaped and evidence was collected for laboratory examination. The evidence retrieved included a black plastic bag containing bloody clothing of the victim, several screwdrivers, and a sheet located on the kitchen floor. In addition, an air mattress positioned at the foot of Appellant's bed was examined by police officers. The victim had been known to sleep on the air mattress on occasion.

2

Following the search of the residence, KSP Detective Billy Hall interviewed Appellant and his wife. Both denied any involvement in S.J.'s injuries, and maintained that the victim purposely inserted the screwdriver into her vagina. Also, Appellant's wife informed Detective Hall that there were bloody items located in a trash bag on the front porch that she alleges S.J. placed there. Appellant denied any direct knowledge of the injury to S.J.'s body.

More than a week after the search of the residence, Appellant's wife contacted the KSP to report that she had discovered two additional screwdrivers. Appellant's wife communicated to the authorities that she found the screwdrivers in the front living room of the residence. However, the police officers who conducted the search of the dwelling were certain they would have seen such items if they had been in that location at the time. Subsequent laboratory testing revealed that the victim's blood appeared on one of the newly discovered screwdrivers.

Following multiple surgeries and the insertion of a colostomy, S.J. was released from the hospital to the foster care of a Medical Fragile Foster Care parent, Shonda Combs. Mrs. Combs reported that on December 24, 2004, S.J. informed her of an occasion in which Appellant came into the bedroom where S.J. was lying and "put his thing in her, and it hurt, and made her bleed real bad." She then proceeded to tell that Appellant took a screwdriver and placed it inside of her. S.J. also conveyed to Mrs. Combs that Appellant had said he would kill her if she spoke of the incident to anyone. The victim also told Ms. Combs that the Appellant cleaned the screwdriver off at the kitchen sink. After receiving this information, Mrs. Combs contacted a social worker. Pursuant to Mrs. Comb's report of the incident, S.J. underwent a videotaped forensic

3

interview by a social worker. During the interview, S.J.'s statements were consistent with the prior details of the incident that she had revealed to Mrs. Combs.

On February 2, 2005, a Pike County Grand Jury returned a three count indictment against Appellant. Count one stated that on or about November 26, 2004, Appellant committed rape in the first degree by engaging in sexual intercourse with a person less than twelve years of age.[3] Count two charged Appellant with the offense of rape when he engaged in sexual intercourse with a person less than twelve years of age, during which time the victim sustained a serious injury.[4] The final count alleged that during the period from November 26-30, 2004, Appellant committed the offense of criminal abuse in the first degree when he violated KRS § 508.100 which states:

> (1) A person is guilty of criminal abuse in the first degree
> when he intentionally abuses another person or permits
> another person of whom he has actual custody to be abused
> and thereby: (a) causes serious physical injury; (b) or places
> him in a situation that may cause him serious physical injury;
> or (c) causes torture, cruel confinement, or cruel
> punishment.

Appellant's trial took place on June 20, 2005. During the proceedings, S.J. testified that on November 26, 2004, the Appellant entered the room where she was lying on an air mattress. S.J. testified that Appellant placed his penis into her vagina, causing her to bleed, and then placed a screwdriver inside her afterwards. When confronted with her previous inconsistent statement at the hospital that she had purposefully placed the screwdriver inside herself, S.J. explained that it was due to the Appellant's threat of killing her if she told anyone. She explained to the jury her injuries, past and future surgeries, and displayed her colostomy.

---

[3] KRS 510.040.
[4] Id.

4

At the close of the commonwealth's case, counsel for Appellant made a motion for a directed verdict, which was denied. The motion was renewed at close of all the evidence and it too was denied. The jury returned a guilty verdict on both counts of first degree rape. Appellant was sentenced to twenty years on each count to be served concurrently.

Appellant argues that the judgment of first degree rape should be overturned and the charges dismissed. He asserts that the Commonwealth's evidence was insufficient to survive his motion for a directed verdict and that the trial court's ruling to the contrary was erroneous. Appellant alleges that there was deficient evidence presented by the Commonwealth during the trial court proceedings. Appellant asserts that the conflicting and self-contradictory testimony of an eight-year-old child should not be sufficient to establish guilt beyond a reasonable doubt. Moreover, Appellant attempts to support his argument for a reversal by relying on Garmeada Coal Co. v. Mabe.[5] The Court stated in Garmeada that "In civil cases the party has the burden of proof to make out a prima facie case, while in criminal cases the accused must be proven guilty beyond a reasonable doubt. It is patent it takes strong and convincing evidence to prove anything beyond a reasonable doubt. . . ."[6] Also, Appellant refers to the language in Wilke v. Commonwealth[7] which states "if the evidence is as consistent with innocence as with guilt his conviction cannot be sustained. . . ."[8]

However, the Appellant's reliance on the aforementioned case law is misplaced. Instead, the Commonwealth utilizes the proper standard of review to

---

[5] 222 S.W.2d 829 (Ky. 1949).
[6] Garmeada, 222 S.W.2d at 830 (Ky. 1949).
[7] 452 S.W.2d 420 (Ky. 1970).
[8] Wilkey, 452 S.W.2d at 422.

5

determine when a directed verdict is justified. In <u>Commonwealth v. Benham</u>[9] this Court opined,

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be *clearly unreasonable for a jury to find guilt,* only then the defendant is entitled to a directed verdict of acquittal.[10]

From the evidence in this case, and taking the evidence in the light most favorable to the Commonwealth, it was not clearly unreasonable for the jury to find Appellant guilty of two counts of rape in the first degree.

The rape victim, eight-year-old S.J., participated in a video-taped forensic interview by a social worker in which she explained what Appellant had done to her on the night of November 26, 2004. She discussed how Appellant raped her and subsequently placed a screwdriver inside her vagina, with both acts causing her to bleed. S.J.'s account of this event was consistent during her testimony and with her initial discussion with Shonda Combs (i.e., the Medical Fragile Foster Care parent) on December 24, 2004. In addition, the photographs of her injuries that were viewed by the jury show the sexual abuse and violence that this child endured at the hands of Appellant. Moreover, there was no reasonable explanation for the delay in taking S.J.

---

[9] 816 S.W.2d 186 (Ky. 1991).
[10] <u>Benham</u>, 816 S.W.2d at 187 (Ky. 1991) (<u>citing Commonwealth v. Sawhill</u>, 660 S.W.2d 3, 4-5 (Ky. 1983) (emphasis added)).

to the hospital after the rape had occurred. Lastly, S.J.'s failure to inform Appellant's wife about the rape was justified by her fear that Appellant would kill her if she told anyone.

Clearly, there was sufficient evidence presented from which a reasonable juror could find guilt beyond a reasonable doubt. This Court has recognized "that it is within the peculiar province of the jury to determine the credibility of the witnesses and the weight to be given their testimony, and in the exercise of function they may believe one witness though contradicted by a number of others, or one set of witnesses to the exclusion of others."[11] Also, this Court has consistently taken the position that "an appellate court cannot reevaluate the evidence or substitute its judgment as to the credibility of a witness for that of the trial court and the jury."[12]

Accordingly, Appellant's convictions are affirmed.

Lambert, C.J., and Graves, McAnulty, Minton, Roach, Scott, and Wintersheimer, JJ., concur.

---

[11] Bowling v. Commonwealth, 318 S.W.2d 53, 55 (Ky. 1958).
[12] Commonwealth v. Jones, 880 S.W.2d 544, 545 (Ky. 1994) (quoting Commonwealth v. Bivins, 740 S.W.2d 954, 956 (Ky. 1987)).

COUNSEL FOR APPELLANT:

James W. Craft II
21 North Webb Avenue
Whitesburg, KY 41858


COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky

Louis F. Mathias, Jr.
Assistant Attorney General
Criminal Appellate Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601-8204