RENDERED: MARCH 28, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0016-MR

PAULINE M. RAYBURN                                                    APPELLANT

v.

APPEAL FROM KENTON CIRCUIT COURT
HONORABLE KATHLEEN LAPE, JUDGE
ACTION NO. 22-CR-01239-001

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND A. JONES, JUDGES.

JONES, A., JUDGE:  Acting with the assistance of her court-appointed counsel,
Pauline M. Rayburn appeals from the Kenton Circuit Court's amended judgment
and sentence entered on December 27, 2023.  Following a jury trial, Rayburn was
convicted of first-degree possession of a controlled substance, first offense
(methamphetamine).  She was sentenced to two years probated for three years.  On
appeal, Rayburn asserts that the trial court should have granted her motion for a

directed verdict because the evidence was insufficient to establish that she possessed the methamphetamine in question. Having reviewed the record and the applicable law, we affirm.

## I. BACKGROUND

K-9 Officer Sean Dooley, Villa Hills Police Department, was working on October 2, 2022, when he noticed an occupied truck parked behind a closed Speedway gas station around 12:30 a.m. Officer Dooley testified that his suspicions were aroused because it was unusual for an occupied vehicle to be parked at the gas station after closing time. After watching the vehicle for a while, Officer Dooley alerted Officer Michael Haught to the truck's presence.

When the truck pulled out of the Speedway, Officer Haught began following it in his police cruiser. Officer Haught ran the license plate, which showed the registration had been expired for approximately a year. Officer Haught also determined the registration decal belonged to a trailer registered in Indiana. As a result, Officer Haught initiated a traffic stop. Officer Dooley saw that Officer Haught had stopped the truck, and he soon joined Officer Haught.

When Officer Haught approached the truck, Rayburn was in the driver's seat, and Justin Dicks was in the passenger's seat. Rayburn told Officer

Haught that the truck belonged to her uncle but that she could not remember his name.[1] Ultimately, the truck was determined to belong to Tony St. Clair.

Rayburn told Officer Haught that she was using the truck because she was in the process of moving her belongings to Florida. She indicated that the two were en route from Lafayette, Indiana, where she had been living, to Campbellsville, Kentucky, where they intended to pick up her mother. She stated that the two had left the prior day and slept overnight at a rest stop before continuing on. She indicated that they had stopped at the Speedway so that she could charge her phone. Officer Haught found many aspects of Rayburn's story odd, including why the two were approximately a hundred miles off the most direct route and why the journey had taken them so long. Officer Haught also believed that Rayburn was speaking unusually fast, a behavior he believed was consistent with having recently used methamphetamines. These factors combined with the truck's location at the Speedway after it was closed, a location he knew was utilized by narcotics users due to its proximity to the interstate, caused him to suspect that foul play was afoot. Officer Haught asked Rayburn for permission to search the truck. When she refused to consent, Officer Haught asked Officer Dooley to have his canine do a sniff inspection of the truck.

---

[1] During her trial, Rayburn testified that the truck actually belonged to Dicks's uncle, and that she just said her uncle for simplicity's sake.

Officer Dooley's canine, Onyx, alerted to the presence of narcotics. Officer Haught searched the passenger side of the truck and found a methamphetamine pipe with residue under the seat. He also found a single razor blade on the dash. Officer Haught testified that razor blades are often used to cut narcotics into smaller sizes to snort or fit into a pipe to smoke.

Officer Haught then questioned Rayburn further. She denied that there was any marijuana in the truck but admitted to having previously consumed marijuana in the truck noting that she had a medical marijuana card for Florida. Dicks admitted he had THC cartridges in the car. When confronted with the discovery of the pipe and the razor blade, Rayburn admitted she knew there were razor blades in the truck because she had cut herself when cleaning the truck earlier. She further admitted that she had been driving the truck for approximately a month. She denied that the pipe belonged to her and stated that it probably belonged to her uncle or to her brother, who she had given a ride to earlier. She denied smoking methamphetamine at Speedway and claimed that she was unaware of any methamphetamine in the truck.

A further search of the truck revealed a bag of methamphetamine that weighed about 3.5 grams inside the truck bed's toolbox on the driver's side. A grocery-style bag containing a locked Sentry safe was also located in the toolbox. The keys to the toolbox were located on the same ring as the key to the truck's

ignition. Inside the Sentry safe, Officer Dooley found a larger bag of methamphetamine that weighed about 15 grams, a scale with methamphetamine residue, and THC cartridges. On the passenger's side of the toolbox, Officer Dooley found Dicks's backpack, which held pictures of his family and a sunglass case that contained pipes with residue.

At the close of the Commonwealth's case, Rayburn moved for a directed verdict. She argued that the pipe was found under Dicks's seat, there was no proof that she was ever in the toolbox or knew that the keys on the key ring could unlock the toolbox or the safe, and there was no evidence that she knew about the methamphetamine in the toolbox or ever exercised any domain or control over it. The trial court denied Rayburn's motion for a directed verdict.

Rayburn then testified in her own defense and denied ownership and knowledge of narcotics in the truck. She stated that she never opened the toolbox and was unaware that it could be opened. She further testified that while she told the officers she had been driving the truck for approximately a month, it was actually Dicks who had been driving the truck for most of that time.

Rayburn renewed her motion for a directed verdict at the end of all the proof stating that there had been no evidence as to her knowledge of the methamphetamine, and she testified she did not know it was in the truck. The trial court again overruled the motion.

The jury found Rayburn guilty of first-degree possession of a controlled substance. She was sentenced to two years probated for three years. This appeal followed.

## II. STANDARD OF REVIEW

The standard for a trial court's consideration of a criminal defendant's motion for directed verdict is well-established.

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). "So long as the Commonwealth produces more than a mere scintilla of evidence to support the charges, a defendant's motion for directed verdict should be denied." *Sims v. Commonwealth*, 701 S.W.3d 313, 331 (Ky. 2024) (quoting *Taylor v. Commonwealth*, 617 S.W.3d 321, 324 (Ky. 2020)). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham*, 816 S.W.2d at 187.

## III. ANALYSIS

Rayburn was convicted of first-degree possession of a controlled substance, first offense (methamphetamine), in violation of KRS[2] 218A.1415. This statute provides that "[a] person is guilty of possession of a controlled substance in the first degree when he or she knowingly and unlawfully possesses . . . (c) Methamphetamine[.]" A defendant's conviction under this statute may be premised on either actual or constructive possession. *Commonwealth v. James*, 586 S.W.3d 717, 721 (Ky. 2019); *Sevier v. Commonwealth*, 434 S.W.3d 443, 455 (Ky. 2014). In the case at bar, no methamphetamine was found on Rayburn's person. Therefore, the Commonwealth needed to prove that Rayburn had constructive possession of the methamphetamine contained in the truck's toolbox.

"Since as early as 1972, Kentucky courts have utilized the concept of constructive possession to connect defendants to controlled substances." *Houston v. Commonwealth*, 975 S.W.2d 925, 927 (Ky. 1998). "To prove constructive possession, the Commonwealth must present evidence which establishes that the contraband was subject to the defendant's dominion and control." *Pate v. Commonwealth*, 134 S.W.3d 593, 598-99 (Ky. 2004). Constructive possession, much like actual possession, may be proven through either direct or circumstantial evidence. *Commonwealth v. James*, 586 S.W.3d 717, 721 (Ky. 2019). However,

---

[2] Kentucky Revised Statutes.

the defendant's physical proximity to an area where drugs are found is insufficient on its own to support a finding the defendant constructively possessed the drugs. *Haney v. Commonwealth*, 500 S.W.3d 833, 835 (Ky. App. 2016). However, the Commonwealth does not have to prove exclusive possession by the defendant. "Two or more persons may be in possession of the same drug at the same time and this possession does not necessarily have to be actual physical possession. It may be constructive as well as actual." *Franklin v. Commonwealth*, 490 S.W.2d 148, 150 (Ky. 1972).

As she did before the trial court, Rayburn argues that the evidence adduced by the Commonwealth was insufficient to prove she possessed the methamphetamine at issue. She points out that no drugs were found on her person or under the driver's seat of the truck, and that she was not the truck's registered owner. While she admits that the keys to the toolbox and safe were on the same keyring as the ignition key, she argues that her testimony established that she did not know about the keys prior to discovery of the methamphetamine. She also notes none of her personal effects were found in the toolbox.

For its part, the Commonwealth points to a plethora of evidence that it maintains was more than sufficient to prove that Rayburn was in constructive possession of the methamphetamine, beginning with the fact that she was in physical possession of the keys to the toolbox and safe. It further notes that while

Rayburn did not own the truck, she originally told law enforcement that she had been driving it for approximately one month, and she admitted to knowing that razor blades were inside the cab because she had cut her foot on one when she was cleaning out the truck. The Commonwealth further cited several inconsistencies in Rayburn's testimony which it claims calls her denial that the methamphetamine was not hers into question.

In *Leavell v. Commonwealth*, 737 S.W.2d 695 (Ky. 1987), the defendant was stopped by police while leaving a hotel after a suspected drug transaction. The hotel room the defendant had left was registered to a man named Moran. An automobile ignition key was found in Leavell's right hand. Inside the hotel room was the key to the car's trunk, which was registered to Moran. Police discovered 90 pounds of marijuana inside the trunk. At trial, Leavell moved for a directed verdict arguing there was insufficient evidence to establish that he was in possession of the marijuana, especially since the key to the trunk was not found on his person when he was arrested. The Kentucky Supreme Court disagreed. It held that "the person who owns *or* exercises dominion or control over a motor vehicle in which contraband is concealed, is deemed to possess the contraband." *Id.* at 697 (emphasis added).

Having reviewed the record, we are sufficiently convinced that it was not unreasonable for the jury to conclude that Rayburn constructively possessed

the methamphetamine. She admitted to law enforcement that she had been driving the truck for a substantial period of time and she was in control of the keys to the truck, the toolbox, and the safe when she was arrested. Additionally, she admitted to knowing that the inside of the truck contained razor blades, items which law enforcement testified were often used to cut up methamphetamine. Overall, the issue was one of credibility for the jury to determine. Accordingly, the trial court did not err in denying Rayburn's motion for a directed verdict.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Kenton Circuit Court's amended judgment and sentence entered on December 27, 2023.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Roy Alyette Durham II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky