RENDERED: JULY 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0038-MR

DAMON MCCORMICK                                       APPELLANT

v.                     APPEAL FROM HENDERSON CIRCUIT COURT
HONORABLE KAREN LYNN WILSON, JUDGE
ACTION NO. 23-CR-00287

COMMONWEALTH OF KENTUCKY                          APPELLEE

OPINION
AFFIRMING IN PART AND REVERSING IN PART

** ** ** ** **

BEFORE: EASTON, L. JONES, AND McNEILL, JUDGES.

McNEILL, JUDGE: Damon McCormick ("McCormick") appeals from a

Henderson Circuit Court judgment convicting him of first-degree possession of a

controlled substance (methamphetamine), possession of drug paraphernalia, and

violation of a city ordinance and sentencing him to three years' imprisonment. We

affirm McCormick's possession convictions but reverse his conviction for

violating a city ordinance.

# BACKGROUND

In the early morning of May 4, 2023, Officer Jacob Stauffer of the Henderson Police Department observed a car parked at Red Banks Park after hours. The vehicle was occupied by Michelle Duncan ("Duncan"), Robert Roberts ("Roberts"), and McCormick. While Officer Stauffer spoke with the occupants, Duncan made several trips from her vehicle to a nearby trash can to throw things away. In the trash can, Officer Stauffer found a glass pipe, a plastic bag with suspected methamphetamine ("meth"), and another plastic bag with two smaller baggies containing suspected meth.[1]

Evidence concerning who the contraband belonged to was conflicting. At trial, Duncan conceded the meth was in her vehicle but did not say how it got there. Roberts, at one point, testified some of the meth was his and some of it was Duncan's. Later, he said it was all Duncan's. He denied that McCormick had any meth. However, at the scene, Roberts told police: "That dope and pipe (or pot) don't belong to [Duncan]. It belongs to [McCormick] – he had the dope."

Further complicating the issue, Roberts is difficult to understand. At several points during his testimony, he had to clarify that he was saying "pot" and not "pipe." He also used the term "dope" inconsistently to refer to both marijuana

---

[1] Police also recovered a jar with suspected meth and a marijuana joint in the back seat of the vehicle, as well as a bag of suspected synthetic marijuana in the landscaping outside the front passenger side window.

-2-

and meth. However, what was uncontroverted was that all three had smoked meth together before arriving at the park.

Officer Stauffer testified the meth pipe was in an Arby's bag and the baggies containing meth underneath the Arby's bag. Roberts said McCormick and Duncan put their drugs in a brown paper bag or an Arby's bag and put it in the garbage. He also testified that McCormick gave Duncan a brown paper bag and that McCormick had his dope in a bag, and they threw it away. Roberts also claimed that "pot" was the only drug he saw McCormick hand Duncan. Body cam footage possibly shows McCormick handing Duncan a large plastic grocery-like bag that she then throws away in the garbage can. However, it is unknown if the Arby's bag or the contraband was ever inside.

Ultimately, all three occupants were charged with the items in the trash.[2] Following a jury trial, McCormick was convicted of first-degree possession of a controlled substance (meth),[3] possession of drug paraphernalia, and violation of a city ordinance. He was sentenced to three years' imprisonment. This appeal followed.

---

[2] Duncan and Roberts entered plea agreements and testified at McCormick's trial.

[3] Although McCormick was charged with first-degree trafficking in a controlled substance, the jury convicted him of the lesser included offense of first-degree possession of a controlled substance.

## STANDARD OF REVIEW

McCormick challenges the trial court's denial of his motions for a directed verdict. Our standard of review was outlined in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991):

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Id.* at 187. On appellate review, the test is whether, given the evidence as a whole, "it would be clearly unreasonable for a jury to find guilt[.]" *Id.* If so, the defendant is entitled to a directed verdict. *Id.* However, the Commonwealth needs only to produce more than a "mere scintilla" of evidence to defeat a defendant's motion for a directed verdict. *Id.* at 188.

## ANALYSIS

McCormick argues the trial court erred in denying his motions for directed verdict on the charges of first-degree trafficking in a controlled substance (meth), possession of drug paraphernalia, and violation of a city ordinance. As to

the first-degree trafficking and possession of drug paraphernalia charges, KRS[4] 218A.1415(1)(c) provides that "[a] person is guilty of possession of a controlled substance in the first degree when he or she knowingly and unlawfully possesses . . . [m]ethamphetamine[.]" Similarly, KRS 218A.500(1) and (2) make it unlawful for any person to possess with intent to use drug paraphernalia, which is defined in part to mean "all equipment, products and materials of any kind which are used, intended for use, or designed for use in . . . inhaling, or otherwise introducing into the human body a controlled substance in violation of this chapter[.]" "Possession" means "[t]o have as property; own." *Pate v. Commonwealth*, 134 S.W.3d 593, 598 (Ky. 2004), *as modified* (Jul. 23, 2004) (citation omitted). Additionally, "'possession' for purposes of KRS Chapter 218A includes both actual and constructive possession." *Id.* (citations omitted).

McCormick asserts "the Commonwealth did not offer any evidence of substance . . . that [he] possessed, constructively or otherwise, the methamphetamine or pipe." He notes that no drugs were found near where he was sitting, and it is unknown what was in the bag he possibly gave to Duncan to throw away. He points to testimony from Roberts that the meth was Duncan's and that all McCormick had was "pot."

---

[4] Kentucky Revised Statutes.

Considering the evidence as a whole, and in a light most favorable to the Commonwealth, we cannot say it would be clearly unreasonable for a jury to find McCormick guilty of possession of meth and possession of drug paraphernalia. McCormick had smoked meth previously that day with Duncan and Roberts. It is undisputed the meth found in the trash can came from the vehicle and that McCormick was the front seat passenger when the drugs were found. Additionally, Roberts testified that McCormick had his dope in a bag, and Duncan got the bag and threw it away. Police body cam footage shows McCormick possibly handing Duncan a large plastic bag to throw away.

Most significant is Roberts' exclamation on body cam that the "dope and pipe don't belong to [Duncan]. It belongs to [McCormick] – he had the dope." While McCormick argues Roberts used the word "dope" during his testimony to refer to marijuana, he also used the term to refer to meth. It is for the jury to interpret what Roberts meant. *See Gordon v. Commonwealth*, 916 S.W.2d 176, 180 (Ky. 1995). As to Roberts' testimony that McCormick only had "pot" and that the meth belonged to Duncan, "when the evidence is contradictory, the credibility of witnesses and the weight to be given to sworn testimony are for the jury to decide." *Roark v. Commonwealth*, 90 S.W.3d 24, 38 (Ky. 2002).

Concerning possession of drug paraphernalia, in addition to Roberts' statement to officers that the pipe belonged to McCormick, Roberts also said

-6-

McCormick put something in a brown paper bag and gave it to Duncan to throw away. Officer Stauffer found the meth pipe in a brown paper bag in the trash can. McCormick argues Roberts was saying "pot" and not "pipe" on the body cam video and points to a specific instance in Roberts' testimony where he had to clarify he was saying "pot" and not "pipe."

While it is possible Roberts said "pot" on the body cam video, it is also possible he said "pipe." Especially considering his full statement that the "dope *and* pipe (or pot)" belong to McCormick. If Roberts uses the word "dope" to refer to marijuana, as McCormick argues, then it would make no sense for him to say the "dope (marijuana) and pot" belong to McCormick. So, Roberts was saying either the meth and marijuana belonged to McCormick, or the marijuana and pipe belonged to McCormick. Or, that McCormick possessed both the meth and pipe, as the jury believed. We find no error.

Finally, as to the charge of violating a city ordinance, McCormick argues the Commonwealth presented no evidence of any ordinance he allegedly violated. Having reviewed the record, we must agree. The only evidence presented concerning this charge was Officer Stauffer's testimony that the park was closed from 1:00 a.m. to 5:00 a.m. Originally, the court granted the motion for directed verdict, but the issue came up again during the discussion of jury instructions. Against the motion, the Commonwealth pointed to the citation, which

referenced Henderson City Ordinance 17.1, an ordinance that allows police to enforce the rules of city parks. However, that ordinance was not entered into evidence. It also cited Officer Stauffer's testimony about park hours and that "failure to abide by the rules of the park can result in criminal action." The trial court noted the Commonwealth's argument was "a little beyond what [Officer Stauffer] testified to," yet allowed the issue to proceed to the jury.

To find McCormick guilty of violation of a local ordinance, the jury instructions required the jury to find that McCormick: (1) "entered or remained on city property without permission" and (2) "in violation of a local ordinance." Here, there was proof that McCormick was in Red Banks Park after hours, but there was no evidence that such was "in violation of a local ordinance." No one testified that breaking park rules violated a local ordinance. Officer Stauffer said only that the park was closed from 1:00 a.m. to 5:00 a.m. He did not say being in the park after hours was illegal, much less mention a city ordinance. It would be clearly unreasonable for a jury to find McCormick guilty of violating an ordinance without evidence of such an ordinance's existence. Therefore, the court erred in denying McCormick's motion for directed verdict on this ground.

**CONCLUSION**

Based on the foregoing, the Henderson Circuit Court's judgment is affirmed as to McCormick's convictions for possession of a controlled substance

-8-

and possession of drug paraphernalia and reversed as to his conviction for local ordinance violation and remanded with directions to dismiss the local ordinance charge and amend the judgment accordingly.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sarah D. Dailey
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky