Mary FIELDS, Appellant,

v.

Ernest WILKINS, Appellee.

Jess FIELDS, Appellant,

v.

Ernest WILKINS, Appellee.

Court of Appeals of Kentucky.

Nov. 12, 1954.

Rehearing Denied April 29, 1955.

F. B. Martin and Sam Boyd Neely, Mayfield, for appellant.

Farland Robbins and Roscoe Cross, Mayfield, for appellee.

CULLEN, Commissioner.

An automobile owned by Jess Fields and being operated by his wife, Mary Fields, was involved in a collision with an automobile operated by Ernest Wilkins. Mr. and Mrs. Fields sued Wilkins for damages, and he counterclaimed. The jury found both parties negligent, under a "dogfall" instruction. Mr. and Mrs. Fields have appealed, claiming error in the instructions. There is no cross appeal.

The accident occurred upon U. S. Highway No. 51, which runs north and south in front of the Fields farm. The Fields residence lies on the east side of the highway. Mrs. Fields drove her automobile onto the highway from her driveway and turned south (to her left). Her automobile was struck by the Wilkins automobile, which was approaching from the south. The evidence tends to establish that all or most of the Fields car was in the west traffic lane when hit, and that the Wilkins car had cut across the center line partly into the west lane.

Mrs. Fields testified that she stopped her automobile at the edge of the highway, looked to her left, and saw the Wilkins automobile at a point opposite some grain bins, 900 feet away. She then drove onto the highway, reached the west lane, and had proceeded south some 45 feet when the Wilkins automobile came across the center line and struck her. Her testimony as to the point of the collision was supported by other witnesses.

Wilkins testified that his car was within 150 to 200 feet of the Fields driveway when Mrs. Fields came out of the driveway, without stopping, and started across the high-

way, angling to her left; that he turned his car to the left in an effort to avoid her, but she came right on into his path; and that the accident occurred just south of the driveway. He was corroborated by witnesses who had been following him in other automobiles. The evidence of Wilkins and his corroborating witnesses was that his car was traveling not more than 45 miles per hour.

The instructions are criticized because, in instructing as to Mrs. Fields' duty to stop and look, and to yield the right of way to any vehicle approaching so closely on the highway as to constitute a hazard, the court made reference to Mrs. Fields' duty to see what a reasonable lookout would have disclosed, and to make a reasonable evaluation of the extent to which the approaching car constituted a hazard. It is contended that the language of the instruction was such as to constitute a positive statement of fact to the jury that Mrs. Fields did not see what she should have seen, and did not reach a correct conclusion as to the proximity of the Wilkins car.

Although the wording of the instruction is objectionable, we believe it could not have been prejudicial under the evidence. If the jury believed Mrs. Fields' story, that she looked and saw the Wilkins car 900 feet away, the jury could not possibly have found that she failed to see what was there to be seen, or that she misjudged the nature of the hazard. On the other hand, if the jury believed Wilkins' story, they would be compelled to conclude either that Mrs. Fields did not look or that she completely misjudged the distance of the Wilkins automobile.

We think it is fair to assume that, as a practical matter, the jury will interpret the instructions in the light of the evidence. Instruction No. 1a is capable of two interpretations; one being a statement of the law applicable *if* the Wilkins car was so close that it should have been recognized to be an immediate hazard; and the other being a statement of the law predicated upon an *assumption of the fact* that the Wilkins car was so close as to constitute a hazard. Since the position of the Wilkins car at the time Mrs. Fields emerged from her driveway was the major fact in issue, we think it would be unreasonable to believe that the jury would interpret the instructions as having decided this fact for the jury.

A jury must be credited with some intelligence and understanding, and we believe reasonably intelligent men would not have been misled by the instruction.

Some complaint is made of the fact that Instruction No. 1 imposed upon Mrs. Fields the absolute duty to yield the right of way, and Instruction No. 2 gave Mr. Wilkins the unqualified right of way. However, Instruction No. 1a made it clear that the right of way was not absolute and unqualified, and we think the instructions when read together were not misleading.

The judgment is affirmed.