# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: APRIL 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0510-MR

MICHAEL GARLAND                                       APPELLANT

V.            ON APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE JOHN D. SIMCOE, JUDGE
NO. 21-CR-01165

COMMONWEALTH OF KENTUCKY                        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

This appeal comes before the Court as a matter of right[1] from Hardin Circuit Court. Michael Garland was convicted of first-degree trafficking in a controlled substance (TICS) and first-degree persistent felony offender (PFO). He was sentenced to twenty years in prison. He now argues that a palpable error occurred when the trial court erroneously instructed the jury on the first-degree TICS charge that included a theory of possession with intent to transfer. He also argues that several palpable errors occurred in the sentencing phase that cumulatively rendered the sentencing phase fundamentally unfair. For the following reasons, we affirm the trial court.

## I.     Facts

Garland and his friend, Angelica, were driving to a concert on December 1, 2021. Officer Chris Smith of the Grovetown Police Department observed the

---

[1] Ky. Const. § 110(2)(b).

vehicle carelessly driving and pulled the vehicle over. On approaching the vehicle, Officer Smith observed that Garland was nervous and refused to look at him. Officer Smith asked if there was any contraband in the vehicle and Garland admitted there was some marijuana. When Garland was ordered out of the vehicle and a pat down search was executed, Garland attempted to pull away when Officer Smith was about to pat his right-hand pocket. Officer Smith then detained Garland in handcuffs. Garland managed, nonetheless, to reach inside his pocket and grab hold of two bags of drugs. After Officer Smith secured the bags, one was revealed to be marijuana and the other he believed to contain methamphetamine. Laboratory analysis would later confirm the substance was methamphetamine and the amount was 10.646 grams.

Garland was advised of his *Miranda* rights at the scene and Garland informed Officer Smith that he was only a "middleman." Garland testified this was only a "cryptic" reference to the fact that the methamphetamine belonged to Angelica, who apparently was crying after the drugs had been found.

Garland denied knowing the bag contained methamphetamine. He asserted that earlier that day, he and Angelica had gone to another woman's house, named Amanda. Angelica had used the bathroom while Garland looked at Amanda's car about possibly fixing it for her. When the two were about to leave, Amanda had gone back into the house and found the bag of methamphetamine. Not wanting the drugs in her house, she approached Garland and stuck the bag in his pocket, merely informing him that it was marijuana belonging to Angelica and that he should give it back to her.

Garland testified he did not think to look at the bag nor he did he think to immediately give the bag to Angelica, simply assuming when she wanted the drugs, she would begin to look for them. Amanda was called to testify by Garland and supported this story.

The jury convicted Garland as described above and he was sentenced to twenty years in prison. We now consider the merits of the appeal.

## II. Standard of Review

An unpreserved error will only be reversed for manifest injustice. RCr[2] 10.26. Any error in a jury instruction is presumptively prejudicial. *Stewart v. Commonwealth*, 306 S.W.3d 502, 508 (Ky. 2010). Nonetheless, an unpreserved error for jury instructions is still subject to palpable error review. *Id.* Thus, the error must be "so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006). "[A] reviewing court must plumb the depths of the proceeding . . . to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4. Because all the errors alleged by Garland are unpreserved, all are subject to the same standard. But Garland has argued the sentencing phase errors had a cumulative impact. Under that theory, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). But the individual

---

[2] Kentucky Rules of Criminal Procedure.

errors must be "substantial, bordering, at least, on the prejudicial." *Id.* "[W]e have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Id.*

### III.  Analysis

**A. Jury Instruction not Palpably Erroneous**

Garland has identified Instruction Number Four as the erroneous instruction. It reads,

You will find the Defendant guilty of First-degree Trafficking in a Controlled Substance (Two Grams or More of Methamphetamine) under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about the 1st day of December, 2021, and before the finding of the Indictment herein, he acting alone or in complicity with another, had in his possession a quantity of two (2) or more grams of methamphetamine; AND

B. That he knew the substance so possessed by him was methamphetamine; AND

C. That he had the methamphetamine in his possession with the intent of selling, distributing, or transferring it to another person or persons.

Garland argues that subpart C of this instruction erred by instructing the jury on a possession with intent to transfer theory that is contrary to statute.

4

"A person is guilty of trafficking in a controlled substance in the first degree when he or she knowingly and unlawfully traffics in . . . Two (2) grams or more of methamphetamine[.]" KRS[3] 218A.1412(1)(b). "Traffic" is defined as "to manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance[.]" KRS 218A.010(56). We have held that the statute excludes an understanding of traffic as possession with intent to transfer. *Commonwealth v. Rodefer*, 189 S.W.3d 550, 552 (Ky. 2006). What we said in *Rodefer* remains just as true under the current version of the statute, as it existed in 2006, so *Rodefer* remains good law until the General Assembly chooses to alter the definition of traffic to include possess with intent to transfer under the second definition found in KRS 218A.010(56). Therefore, Garland is correct that the trial court erroneously instructed the jury.

But, just as in *Rodefer*, we do not believe this amounted to palpable error because Garland's own testimony did not negate an alternative theory of the crime charged as instructed. *Id.* at 553. In *Rodefer*, the defendant "admitted that the cocaine was his, and that he 'shared' the cocaine with one of his two accomplices on the night of the crime." *Id.*

> Thus, his own testimony would have supported a conviction of trafficking under the "transfer" alternative of KRS 218A.010(34), though not under the "possession with intent to [traffic]" alternative. In view of Appellant's own testimony that he, in fact, committed the offense of which he was convicted, albeit by an alternative method, we conclude that the faulty instruction did not result in manifest injustice, much less seriously affect the fairness, integrity, or public reputation of judicial proceedings.

---

[3] Kentucky Revised Statutes.

*Id.* Similarly, Garland's own testimony was that he was a "middleman" on behalf of Angelica. He testified his admission to Officer Smith on the night of the arrest was a "cryptic" attempt to alert the officer that the methamphetamine belonged to Angelica. We do not believe this testimony was an effective denial of possession. We have noted that KRS Chapter 218A does not define possession, so we have referred to its common definition as ownership. *Pate v. Commonwealth,* 134 S.W.3d 593, 598 (Ky. 2004). In so holding, we have also held the statute allows for constructive or actual possession. *Id.* (citing *Houston v. Commonwealth,* 975 S.W.2d 925, 927 (Ky. 1998)). And we have also held that possession does not require exclusivity. *Id.* (citing *Franklin v. Commonwealth,* 490 S.W.2d 148, 150 (Ky. 1972)). All that is necessary to establish constructive possession is evidence "that the contraband was subject to the defendant's dominion and control." *Id.* at 598-99 (cleaned up).

Thus, Garland's testimony that he was only a "middleman" holding the methamphetamine for Angelica at best was an attempt to say Angelica had constructive possession of the methamphetamine. But Angelica's constructive possession does not negate Garland's actual possession—and Garland did not deny the methamphetamine was found in his pocket. Moreover, even if Angelica had constructive possession, since possession does not require exclusivity, Garland could also still be exercising possession either actual or constructive simultaneously with Angelica. Thus, the evidence still supported

6

conviction of the crime charged as trafficking in a controlled substance by possession with intent to distribute. KRS 218A.010(56).

"Distribute" simply means "to deliver other than by administering or dispensing a controlled substance[.]" KRS 218A.010(13). "'Transfer' means to dispose of a controlled substance to another person without consideration and not in furtherance of commercial distribution[.]" *Id.* at (57). To support a conclusion that Garland possessed the methamphetamine with intent to distribute, there had to be evidence in the record establishing or supporting a reasonable inference that Garland's possession was to deliver with personal consideration or in furtherance of commercial distribution or both. It is true that Garland denied knowing he possessed methamphetamine, but the jury obviously rejected that testimony, and it is not our place to second-guess that factual determination now. The amount of methamphetamine found on Garland's person was slightly more than 10.5 grams and Officer Smith testified the typical individual dose of methamphetamine was 0.25 grams. Therefore, even if the jury believed Garland's testimony about being a middleman, it was allowed to make a reasonable inference that the methamphetamine was not for his own personal use and that his deliverance of the methamphetamine to Angelica at some future point would be in furtherance of commercial distribution. *Dawson v. Commonwealth*, 756 S.W.2d 935, 936 (Ky. 1988) (possession of numerous controlled substances in pill form as well as location they were found in supported inference that pills were possessed with intent to sell); *McGuire v. Commonwealth*, 595 S.W.3d 90, 98 (Ky. 2019) (possession of

7

multiple baggies of methamphetamine, including one with 2.623 grams, supported inference of intent to distribute); *Jones v. Commonwealth*, 567 S.W.3d 922, 926 (Ky. App. 2019) (constructive possession of more than three grams of methamphetamine supported inference of intent to sell or distribute). Therefore, "the faulty instruction did not result in manifest injustice, much less seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Rodefer*, 189 S.W.3d at 553.

**B. No Cumulative Error in Sentencing Phase**

Garland has argued that several unpreserved errors occurred in the penalty phase of the trial that, cumulatively, rendered that phase fundamentally unfair. First, he argues the Commonwealth improperly appealed to the jury to protect the community in its closing argument. Second, that the jury failed to fix an underlying sentence to the TICS charge prior to sentencing on the PFO charge. Third, that evidence of his probation revocation for a misdemeanor was improperly admitted. Finally, that the PFO jury instruction violated unanimity because evidence had been submitted that he was on probation for a misdemeanor at the time he committed the TICS offense. The latter three allegations are not error in and of themselves, much less bordering on the prejudicial. *Brown*, 313 S.W.3d at 631. Thus, Garland's argument for cumulative error fails.

We have long maintained that following the bifurcated trial procedure of *Commonwealth v. Reneer*, 734 S.W.2d 794 (Ky. 1987), is best practice, but "we have not yet held that the failure to do so is palpable error." *Owens v.*

8

*Commonwealth,* 329 S.W.3d 307, 319 (Ky. 2011). Garland has not cited a case either published or unpublished showing that *Owens*' statement is now incorrect. We have held that "a jury's failure to set a penalty for the underlying offense before finding PFO status does not violate the provisions of the PFO statute." *Id.* (citing *Montgomery v. Commonwealth,* 819 S.W.2d 713 (Ky. 1991)). And we have also held that "the failure to instruct according to *Reneer* is a procedural issue which we need not review without a contemporaneous objection." *Id.* (citing *Miller v. Commonwealth,* 283 S.W.3d 690, 704 (Ky. 2009)). The door is not closed on the possibility that a failure to follow the procedure instructed in *Reneer* could be palpably erroneous. *Id.* at 320. But it has proven to be a steep bar and Garland has not met it here.

In like manner, Garland has not shown that admitting evidence of a misdemeanor probation revocation in the penalty phase is erroneous, much less palpably so. Although he cites to *Conrad v. Commonwealth,* 534 S.W.3d 779, 783-84 (Ky. 2017), for his argument, we find *Conrad* wanting in the proposition argued. *Conrad* did involve an argument that evidence of probation revocation was improperly admitted, but *Conrad* looked to *Martin v. Commonwealth,* 409 S.W.3d 340 (Ky. 2013)—which did not involve that issue— and found it controlling as to whether there was palpable error because there was no evidence the impermissible evidence was sent back with the jury. *Conrad,* 524 S.W.3d at 783-84. At best, *Conrad* simply assumed error and proceeded to the palpable error analysis. But we have held that under KRS 532.055(2)(a), the list of relevant evidence for truth-in-sentencing is not

9

exhaustive; only illustrative. *Garrison v. Commonwealth,* 338 S.W.3d 257, 260 (Ky. 2011) (quoting *Cornelison v. Commonwealth,* 990 S.W.2d 609, 610 (Ky. 1999)). Accordingly, we held that evidence of parole revocation is relevant under the truth-in-sentencing statute even though not specifically listed in it. *Id.* For the same reason, we do not believe evidence of probation revocation is irrelevant, therefore there was no error in admitting this testimony.

As to the unanimity issue, the PFO instruction read

You will find the Defendant guilty of being a First-Degree Persistent Felony Offender under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That prior to December 1, 2021, the Defendant was convicted of 11-CR-00230: First-Degree Illegal Possession of a Controlled Substance Methamphetamine by final Judgment of the Hardin County Circuit Court on March 23, 2012; **AND** that prior to committing the offense for which he was convicted on March 23, 2012, he was convicted of 09-CR-01121: Manufacturing Methamphetamine by final Judgment of the Jefferson County Circuit Court on May 27, 2011;

B. That he was eighteen years of age or older when he committed both of the two offenses of which you believe he was so convicted;

10

C. That pursuant to those 2 convictions, he was sentenced to a term of imprisonment of one year or more for each conviction;

D. (1) That he completed the service of the sentence imposed on him pursuant to at least one such prior conviction no more than five years before December 1, 2021; OR

(2) That he was discharged from parole or probation from the sentence imposed on him pursuant to at least one of such prior conviction no more than five years before December 1, 2021; OR

(3) That he was on probation, parole, conditional discharge, conditional release, or furlough or appeal bond, from at least one such prior conviction at the time he committed the offense of which you have found him guilty in this case; AND

E. That he is now twenty-one years of age or older.

Garland argues that because the jury heard testimony that he was, at the time of the offense, on probation for a misdemeanor conviction, that a juror might have believed under Part D(3) of the instruction that said misdemeanor probation was a qualifying offense and convicted him as a PFO for the misdemeanor probation.

"A jury must be credited with some intelligence and understanding[.]" *Fields v. Wilkins*, 277 S.W.2d 467, 468 (Ky. 1954). "[I]t is presumed that the jury will follow instructions issued to it by the trial court." *Goncalves v.*

11

*Commonwealth*, 404 S.W.3d 180, 197 (Ky. 2013) (quoting *Morgan v. Scott*, 291 S.W.3d 622, 643 (Ky. 2009)). Part A of the instruction clearly identified the two felony convictions the jury was supposed to consider. We believe jurors of ordinary intelligence understood the language in Part D—to wit: "one such conviction"—was in reference to the two convictions listed in Part A. In *Travis v. Commonwealth*, we considered the issue of jury instructions in the penalty phase containing surplus language unsupported by any evidence presented. 327 S.W.3d 456, 462 (Ky. 2010). Garland is correct that *Travis* is not controlling here but only because his case presents a fundamentally different issue—that there was evidence in the record the jury might have used to convict him if they had ignored Part A of the instruction. Tellingly, Garland failed to cite Part A of the instruction in his brief, and his argument that a juror might have relied upon evidence contrary to Part A is speculative—indeed, "too speculative and doubtful to call for a consideration." *Huber & Huber Motor Exp. v. Martin's Adm'r*, 96 S.W.2d 595, 599 (Ky. 1936).

In a different context, we have held that "[s]o long as the instruction . . . enables the jury to identify the instruction with a specific crime established by the evidence and avoids the likelihood of confusion with other offenses presented against defendant in the same trial, then the instructions are adequately differentiated." *Banks v. Commonwealth*, 313 S.W.3d 567, 573 (Ky. 2010). Part A identified the appropriate convictions to consider, and by so doing excluded the evidence of his probation for a misdemeanor conviction

12

from consideration; "and we believe reasonably intelligent men would not have been misled by the instruction." *Wilkins*, 277 S.W.2d at 468.

Finally, we agree with Garland that the Commonwealth improperly addressed the jury with an appeal to the sense of the community. *Commonwealth v. Mitchell*, 165 S.W.3d 129, 132-33 (Ky. 2005). We decline to review this particular error in depth, however, because a single error obviously cannot justify relief under a cumulative error theory. Garland has not argued this error alone justifies reversal for flagrant prosecutorial misconduct; nor has he requested palpable error review under that theory. "[W]hen an issue is unpreserved at the trial court, this Court will not review it unless a request for palpable error review under RCr 10.26 is made and briefed by the appellant." *Webster v. Commonwealth*, 438 S.W.3d 321, 325 (Ky. 2014). Therefore, Garland's cumulative error theory fails.

## IV.    Conclusion

For the aforementioned reasons, we affirm Garland's convictions.

All sitting. All concur.

13

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General